454 P.2d 149

**STATE of Arizona, Appellee,**

v.

**John Maurice VON REEDEN, Appellant.**

No. 1889.

Supreme Court of Arizona.

In Banc.

May 8, 1969.

Gary K. Nelson, Atty. Gen., by Carl Waag, Asst. Atty. Gen., for appellee.

Wilmoth & Goldman, Phoenix, for appellant.

UDALL, Chief Justice:

On July 9, 1967, John Maurice Von Reeden, hereinafter defendant, shot and killed his wife, Rebecca Lynn Von Reeden, at their residence in Phoenix, Arizona. He was subsequently adjudged guilty of the

crime of second degree murder and sentenced to serve ten to fifteen years in the state prison. He now appeals.

■ The court ordered the trial to proceed on Saturday, and because the courthouse was closed on that day a note was posted on the front door which read:

"The case of State v. Von Reeden is now in progress in Division 13 on the 5th floor.

"The public and witnesses may enter the courthouse through the basement entrance on West Madison Street.

"The guard at the entrance will let you in so you may attend the trial."

The note was on the stationery of the trial judge and signed by him. After the lunch break on that day the door to the courtroom was inadvertently left locked for 15 or 20 minutes before it was discovered and unlocked. Defendant contends that as a result of the front door of the courthouse being locked and the courtroom doors being locked for the short time that they were, he was denied his constitutional right to a public trial. We see no merit in the argument. Neither the court nor the state has the right to exclude the public from the courtroom. That the circumstances were such as to make access to the courtroom somewhat more complicated than usual, and for some 15 or 20 minutes access could not be had other than by a person willing to rattle the doors or knock, does not obviate the fact that the trial was open to the public.

Dr. Monroe Shack conducted a medical examination upon the body of the victim to determine the cause of death. Dr. Shack was present in the courtroom for some thirty minutes or so during the examination of one of the state's eye witnesses. Defendant objected to Dr. Shack taking the stand to testify as to the cause of death because he had violated the "rule" of exclusion of witnesses which was invoked at the beginning of the trial. The court overruled the objection and defendant now contends that by doing so it committed fundamental error. We cannot agree.

In State v. Sowards, 99 Ariz. 22, 406 P.2d 202 (1965), we said:

"As we have previously said, exclusion of witnesses from the courtroom and administration of the exclusionary rule is within the sound discretion of the trial judge and this court will not disturb the ruling of the trial court unless there is shown an abuse of discretion and resulting prejudice therefrom."

■ We do not feel that the court abused its discretion in the instant case nor do we feel that defendant was prejudiced by the court's ruling. The state's witness gave testimony that he saw the victim run into his apartment shouting, "He has got a gun. He's going to shoot me."; that he heard a shot and turned and saw a gun recoil in defendant's hand; and that the victim fell to the floor, apparently because she had been hit by a bullet. Dr. Shack testified his examination revealed a bullet had entered the victim's forearm, exited from the inside of her arm, entered her right side, caused extensive internal injuries and finally lodged in a rib. The doctor recovered a .44-magnum slug from the body. The medical examination further showed that the cause of death was the gunshot wound. We can see no way that the eye-witness account of the shooting, overheard by Dr. Shack, could have influenced the testimony he gave as to the results of the medical examination. The findings were documented in the coroner's report and appear there exactly as they were testified to by Dr. Shack. The written report concludes: "It is my opinion that Rebecca Lynn von Reeden died as a result of: Gunshot wound, abdomen." The report was signed by Monroe E. Shack, M.D.

■ Defendant contends that the court erred in refusing to instruct the jury that they could consider his mental condition in determining the existence or nonexistence of malice aforethought. To a limited extent defendant's argument is correct. If by the defendant's mental condition is meant a specific defect or disorder then the argument has been rejected by this

Court in State v. Schantz, 98 Ariz. 200, 403 P.2d 521 (1965). But, if by the defendant's requested instruction and the use therein of the term "abnormal mental or nervous condition" defendant simply means a state of mind in which malice does not exist then the proposed instruction might be correct. However, the instruction is lengthy and vague and we think it unnecessary to comment further other than to say that the court's instruction on malice was correct, and essentially and adequately covered defendant's proposed instruction.

At the trial an attempt was made by the defense to show that defendant was guilty of no more than voluntary manslaughter. To that end evidence was presented which indicated that the marriage between defendant and the victim had been stormy; that several divorce actions had been filed; that the couple had separated on several occasions and subsequently reunited and that during the separations the victim had committed adultery with at least one other man. The defense attempted to paint a picture of the victim as a woman of low moral character who repeatedly and shamelessly engaged in extra-marital sexual relationships. On the other hand, defendant was made out to be a faithful, loving, forgiving husband who time after time forgave his wife's infidelity and took her back into his home. To that effect are the following remarks by defense counsel made in his opening statement:

"The evidence will show that it wasn't too long before the marriage began to go very, very, very, sour. That he was a man, we will show, Mr. Von Reeden, who gave her gifts. He wasn't lavish. He didn't make that much money, but what he could, he gave her. All of his love and affections were poured out to her.

\* \* \* \* \* \*

"(S)he would go off and leave him, sometimes with the blessing of filing a court procedure, sometimes just go off. That she would come back to him when he would get down on his hands and knees and ask her to, and then she would slam him again.

\* \* \* \* \* \*

"(S)he was, to say the least, a spoiler of the marriage, \* \* \*"

\* \* \* \* \* \*

"We will show that on occasions, he himself had the misfortune of viewing certain things which a husband should never see his wife doing with another man, \* \* \*"

\* \* \* \* \* \*

"We will show that she loved the bed. She would go out on a date because he wasn't man enough for her, and she would rub that into him."

The defense further attempted to show that the victim's alleged misconduct had caused defendant to be "abnormally depressed" and disconsolate. For rebuttal the state called defendant's neighbor to the stand and elicited testimony from him that during the six or seven months preceding the killing defendant had "seemed like a pretty happy-go-lucky guy." The witness further testified that during that time he had seen defendant in the presence of women other than his wife and that on at least one occasion he saw a young woman with defendant at the defendant's apartment late at night. The incident was not pursued further by the state.

Defendant moved for a mistrial on the grounds that the testimony concerning the other women was highly prejudicial and inadmissible under the rule excluding evidence of other unrelated criminal acts of the accused. The motion was denied and defendant now contends that reversible error was committed. We cannot agree.

■ Defendant did not take the stand but he nonetheless put his character in issue. In fact, his alleged high moral character and his wife's alleged lack of it permeated the entire trial. Under these circumstances we do not see how defendant can complain that reversible error was committed when the court allowed the state to present evidence that he had been seen in the presence of other women and had

entertained one in his apartment late at night during a time when he was allegedly undergoing great mental distress due to his wife's infidelity. The evidence was highly relevant and because the defense had opened the door to defendant's character, it was clearly admissible.

Affirmed.

LOCKWOOD, V. C. J., and STRUCKMEYER, McFARLAND and HAYS, JJ., concur.