**UNITED STATES of America, Plaintiff-Appellee,**

**v.**

**John M. HERBERT and Thomas W. Moore, Defendants-Appellants.**

**Nos. 73-1887, 73-1888.**

United States Court of Appeals, Tenth Circuit.

Argued July 9, 1974.

Decided Aug. 14, 1974.

---

3. See footnote 2, *supra.*

J. Terry Wiggins, Asst. U. S. Atty. (James L. Treece, U. S. Atty., on the brief), for plaintiff-appellee.

Ronald F. Weiszmann, Golden, Colo., for defendants-appellants.

Before BREITENSTEIN, Mc-WILLIAMS and BARRETT, Circuit Judges.

McWILLIAMS, Circuit Judge.

John Herbert and Thomas Moore were convicted of knowingly possessing marijuana with an intent to distribute in violation of 21 U.S.C. § 841(a)(1). Upon trial no witnesses were called by either defendant, and hence testimony concerning the events which gave rise to the present prosecution necessarily comes from the Government's witnesses. At the outset we would observe that evidence of guilt was overwhelming and that the matters here sought to be raised as grounds for reversal tend to be minuscule, when viewed in context. The background facts will only be briefly developed.

Herbert and Moore, residents of Boulder, Colorado, sought to purchase some marijuana for purposes of resale. Somehow they made contact with Jay Corkill and Henry Wheeler, Arizona residents, who had marijuana for sale. Herbert and Moore decided that the delivery would take place at a residence located at 3055 So. Lincoln, in Englewood, Colorado, where friends of theirs were then living. One of the occupants of 3055 So. Lincoln drove to Boulder and brought Herbert and Moore to the Lincoln street address. Two days later, on April 17, 1973, Corkill and Wheeler arrived in the Denver area in a pickup truck with 385 pounds of marijuana. Moore and another of the Lincoln street residents went to a local Denver motel and led Corkill and Wheeler in their pickup truck to 3055 So. Lincoln. The 385 pounds of marijuana was then taken from the truck and placed in the garage on the rear of the premises.

The Government knew in advance that there might be a delivery of marijuana at 3055 So. Lincoln on the day in question. Accordingly, Government agents had set up a surveillance of the premises. These agents, for example, saw Moore leave and return with Corkill and Wheeler in the pickup camper truck. Other agents saw Corkill and Wheeler, aided by Moore, unload the bricks of marijuana into the garage. Other witnesses who were then living at the Lincoln street residence testified that Herbert was inside the garage, assisting, as the bricks were being unloaded.

Government Agent Ashton and his informant then contacted Herbert at the Lincoln street address shortly after the delivery of marijuana occurred. While the evidence on this is a bit sketchy, a fair inference is that this informant had previously been in touch with Herbert in an effort to arrange a sale of marijuana. In any event, Ashton and his informant called on Herbert at the Lincoln street address and discussed a possible sale. Herbert indicated to Agent Ashton that there was approximately 400 pounds of marijuana for sale, and that the price would be $115 per pound. Ashton got a sample of the marijuana from Wheeler, and then he and his informant left, saying they would return later and consummate the sale. Another Government agent, one Kiefer, then caused a search warrant to issue, and a search of the premises was conducted a few hours later on the same day, resulting in the Government's seizure of the 385 pounds of marijuana which formed the basis for this prosecution.

Seven persons were indicted as a result of this investigation, including Herbert and Moore, as well as Corkill and Wheeler. The other three defendants, who were then living at the Lincoln street premises, pleaded guilty to a lesser offense before trial, and upon trial each testified in behalf of the Government. Midway through the trial, Corkill and Wheeler pleaded guilty. The Gov-

ernment's request to then call Corkill and Wheeler as witnesses against Herbert and Moore was denied by the trial court. The jury convicted Herbert and Moore of possessing marijuana with an intent to distribute and this appeal in their behalf followed. We affirm.

Perhaps the main issue on appeal relates to the refusal of the trial court to require the Government to reveal the name of the informant who accompanied Agent Ashton to the Lincoln street address and who was present when Ashton and Herbert discussed a possible sale of the marijuana. The trial court so ruled, first during trial, and later upon remand to determine the applicability of United States v. Martinez, 487 F.2d 973 (10th Cir. 1973). Counsel still asserts that *Martinez* dictates a reversal of the instant case. We do not agree.

██ In the first place, this argument concerning the identity of the informer can only be made by the one defendant, Moore, since the record indicates quite clearly that Herbert, as well as his counsel, were aware of the informant's identity and further knew that as of the date of the trial the informant's whereabouts was apparently unknown. Furthermore, while the conversation which the informant heard tended to implicate Herbert, it had little or nothing to do with Moore. It is difficult for us to see just how the informant's testimony could have been helpful to Moore in defending against a charge of possession of marijuana with an intent to distribute. Evidence of such possession was not really in dispute, and the informant could offer nothing which would controvert the other testimony that Moore, for example, had assisted in the unloading of the marijuana into the garage. No request for the identity of the informant was made by Moore till the trial was well under way and the showing made as to the necessity for such information was not convincing to the trial court. Nor does it convince us. The foregoing are but a few of the differences between *Martinez* and the instant case. Under the circumstances, the trial court did not err in refusing to require the Government to identify its informant. The instant case bears no resemblance to Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957).

Prior to trial Herbert sought to suppress the use at trial of the 385 pounds of marijuana on the grounds that the search warrant was improperly issued. As mentioned above, the warrant issued on the basis of the affidavit of Agent Kiefer, who in turn relied on information given him by an informant, presumably the one who accompanied Agent Ashton to the Lincoln street address. Kiefer's affidavit set out his reasons for believing and relying upon the information given him by the informant. The trial court overruled the motion to suppress and this ruling is now assigned as error. We find no error.

██ Counsel does not really argue that the affidavit is itself insufficient. Rather, he asserts that the Government did not have to rely upon information acquired from an informer, since Agent Ashton had personal knowledge which should have been the basis for the search warrant. We do not know the precise sequence of events as they occurred on April 17, 1973, but the situation was obviously developing quite rapidly. In any event, the affidavit of Agent Kiefer was sufficient to support the issuance of the warrant, and the fact that the Government might have relied on Agent Ashton for its search warrant is immaterial.

██ The indictment charged the defendants in one count with distributing marijuana, and, alternatively, with possessing marijuana with an intent to distribute. Section 841(a)(1), 21 U.S.C. sets forth several ways in which the statute may be violated, including, of course, both distribution and possession with an intent to distribute. Such being the case, it is proper to allege in the conjunctive, without the indictment being duplicitous. Cordova v. United States, 303 F.2d 454 (10th Cir. 1962),

and Troutman v. United States, 100 F.2d 628 (10th Cir. 1938).

 Moreover, as we read the instructions, the case went to the jury on possession only. The trial court in its instructions did read the statute and the indictment to the jury, both of which referred to the actual distribution of marijuana, as well as possession with an intent to distribute. However, in thereafter defining the essential elements of the crime the trial court clearly indicated that the defendants no longer were charged with the actual distribution of the marijuana, but only with the possession of marijuana with an intent to distribute. Certainly there was no evidence of distribution, unless Wheeler's giving of a small sample to Agent Ashton be deemed such. In any event, the trial court instructed the jury that the material allegations were the possession of marijuana, coupled with a specific intent to distribute. The trial court also instructed the jury as to the lesser offense of mere possession of marijuana *without* an intent to distribute. In such circumstances the trial court did not err in refusing to give instructions tendered by the defendants to the effect that they could not be found guilty of any offense unless there was an actual distribution of the marijuana.

 The other matters here urged as grounds for reversal are also without merit, and extended discussion thereof is not warranted. Herbert was not entitled to a separate trial. This was a joint venture between Herbert and Moore and it was proper to jointly indict them and to jointly try them. The Government's case did not include any confessions or admissions against interest on the part of any defendant. We thus perceive no basis on which to hold that the trial court abused its discretion. United States v. Davis, 436 F.2d 679 (10th Cir. 1971), and United States v. Fairchild, 435 F.2d 972 (10th Cir. 1970), cert. denied, 401 U.S. 901, 91 S. Ct. 827, 27 L.Ed.2d 800 (1971).

 Neither was defendants' cross-examination of certain of the Government's witnesses significantly abridged by the failure of the trial court to require these witnesses to reveal their home addresses. *See* Smaldone v. United States, 484 F.2d 311 (10th Cir. 1973).

 Lastly, there was no error in permitting Agent Ashton to testify, even though he had remained in the courtroom after the trial court on its own suggestion invoked the exclusion rule. In this connection there was some misunderstanding or oversight since there admittedly was no specific request that Agent Ashton be allowed to remain. We note, however, that customarily the Government is allowed to keep one of its witnesses in the courtroom during the trial, and, but for this oversight, permission would no doubt have been given to keep Agent Ashton in the courtroom during the trial. United States v. Stidham, 459 F.2d 297 (10th Cir. 1972). In any event, this is a discretionary matter, and in our view the trial court did not abuse its discretion in allowing Agent Ashton to testify. Oliver v. United States, 121 F.2d 245 (10th Cir. 1941), cert. denied, 314 U.S. 666, 62 S.Ct. 124, 86 L.Ed. 533 (1941).

Judgment affirmed.