616 P.2d 888

**STATE of Arizona, Appellee,**

v.

**James Dean CLARK, Appellant.**

No. 4346.

Supreme Court of Arizona,
In Banc.

July 25, 1980.

Rehearing Denied Sept. 4, 1980.

**430**

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Chief Counsel, Criminal Division by Jessica L. Gifford, Asst. Atty. Gen., Phoenix, for appellee.

Kerley & Defrancesco, by James K. Kerley, Bisbee, for appellant.

HOLOHAN, Vice Chief Justice.

Appellant, James Dean Clark, was convicted after a trial by a jury of four counts of first–degree murder. He was sentenced to death on each count. A timely appeal was filed. We have jurisdiction pursuant to A.R.S. § 13–4031.

The essential facts are that for a year prior to the murders appellant worked as a wrangler at a dude ranch owned by Mr. and Mrs. Charles Thumm located near Elfrida, Arizona. In the early morning hours of December 4, 1977, appellant murdered four persons. Beginning in the wranglers' quarters, he stabbed to death an older wrangler who was "passed out" in his bed and then shot to death a young wrangler as he slept in his sleeping bag. Appellant next picked up a .357 Magnum from the young wrangler's room, walked from the quarters to the Thumms' house and shot to death both Mr. and Mrs. Thumm. After slashing the tires on all vehicles remaining at the ranch, appellant fled the area in the Thumms' station wagon, taking with him rings and credit cards belonging to the Thumms, guns, including those used in the murders, and a saddle. He was apprehended a few days later in El Paso, Texas.

The issues on appeal are:

1) Did the trial court err in questioning prospective jurors about their views on capital punishment?

2) Did the trial court erroneously deny appellant's request to tape–record the trial?

3) Was appellant's right to confront witnesses violated by John Doe's appearance at the preliminary hearing or at trial?

4) Was appellant denied the right to counsel when he made statements without the presence of counsel?

5) Were photographs of the victims erroneously admitted?

6) Did the trial court err in admitting into evidence a bloodstained pillow?

7) Did the trial court err in refusing to grant a mistrial because the courtroom door was locked for a short time?

8) Did the trial court err in refusing a curative instruction regarding a lapse of time between appellant's arrest and his exculpatory John Doe murder story?

9) Were the jury instructions including a flight instruction erroneous?

10) Is the death penalty unconstitutional, either per se, as violative of the Eighth Amendment or because it excludes the jury from participation?

11) Is the holding of this court in *State v. Watson*, 120 Ariz. 441, 586 P.2d 1253 (1978) correct?

12) Did the trial court err in finding three aggravating circumstances and no mitigating circumstances?

■ Appellant asserts that it was a violation of his right to an impartial jury for the trial court to ask prospective jurors if their opinions on capital punishment would prevent them from making a fair and impartial decision as to appellant's guilt or innocence. He points out that the Arizona system in capital cases is a bifurcated proceeding in which the jury decides guilt or innocence but has no role in deciding the sentence; therefore, he argues that the issue of capital punishment is irrelevant to the jury's consideration and should not be asked.

In *State v. Ramirez*, 116 Ariz. 259, 569 P.2d 201 (1977), we resolved the issue contrary to the appellant's position. In *Ramirez*, we ruled that although veniremen may recognize that the jury does not impose the sentence under Arizona law, the prosecution may inquire whether their attitude toward the death penalty would prevent them from making an impartial decision. In this case, no prospective juror was struck for cause simply because of his or her scruples about the death penalty. The trial court carefully followed the mandates of *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), in conducting the voir dire of the jury. See also *Adams v. Texas*, —— U.S. ——, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980) (48LW4869).

The voir dire and selection of the jury was carried out in conformity with constitutional standards.

■ Appellant alleges that he was denied the effective assistance of counsel by the trial court's denial of his request to tape-record the proceedings. Appellant cites 67 A.L.R.3d 1013 and *Davey v. City of Atlanta*, 130 Ga.App. 687, 204 S.E.2d 322 (1974), as support for this proposition. However, *Davey, supra*, involved a non-record court. Denial of permission to tape the proceedings was not error where an official court reporter was present who could have provided partial transcripts if requested. The trial court's denial of permission to tape the proceedings was not error under the circumstances.

Appellant contends that his right to confront witnesses against him, guaranteed by the Sixth Amendment to the United States Constitution, was denied both at the preliminary hearing and at the trial. The specific instances which form appellant's complaint involve the appearance of John Doe, a witness for the state at the preliminary hearing and later at the trial. The witness did not give his true name or address at the preliminary hearing or at trial. At the preliminary hearing the witness wore a ski mask to hide his identity, but he did remove the mask briefly so that appellant could see him.

Based on *Smith v. Illinois*, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968) and *Alford v. United States*, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931), appellant maintains that the trial court committed error by not requiring a new preliminary hearing and by restricting the defense at trial from cross-examining the witness to determine his name and address.

■ The limitation on cross-examination at the preliminary hearing was not error. The appellant was acquainted with the witness, and he had occasion to be with him in El Paso. The full details of the witness' activities prior to meeting the appellant may not have been known, but the development of such information was a subject

more properly covered by the discovery procedure of the Criminal Rules rather than the preliminary hearing. *See* Rule 15, Rules of Criminal Procedure.

▮ A greater restriction upon the examination of witnesses is permissible at the preliminary examination stage of the criminal process because the preliminary hearing is limited to the determination of probable cause to hold the defendant to answer for an offense. It is not the purpose of the preliminary examination to provide a means for the discovery of evidence. *State v. Bojorquez*, 111 Ariz. 549, 535 P.2d 6 (1975). The Rules of Criminal Procedure provide a separate and adequate means for the defense to discover the evidence.

Restriction on cross–examination at trial is another matter. In *State v. Fleming*, 117 Ariz. 122, 125, 571 P.2d 268, 271 (1977), we stated:

"Distinctions between reasonable limitations on the scope of cross–examination and unnecessary restrictions on the right to confront witnesses are, however, difficult to draw and must be considered on a case–by–case basis. The test is whether the defendant has been denied the opportunity of presenting to the trier of fact information which bears either on the issues in the case or on the credibility of the witness."

Prior to the trial of this case the court ordered that the prosecution disclose to defense counsel John Doe's name and felony record. On the day that John Doe was to testify, the trial court conducted proceedings in chambers with both the prosecutor and defense counsel present. During this hearing John Doe disclosed his real name and the name of the religious retreat where he was currently living. The trial court inquired into the nature of the threat to the personal safety of John Doe, determined the threat was real and ruled, over defense counsel's objection, that John Doe's real name not be revealed to the jury.

At trial, John Doe's address was given as a religious retreat in El Paso. He acknowledged his prior felonies and his activities as a paid Drug Enforcement Administration

informer, heroin addict, procurer of prostitutes and con artist raising money to support his heroin habit.

John Doe's testimony against the appellant dealt with their meeting in El Paso, their activities there, and the statement made by appellant concerning the shooting of Charles Thumm. The defense counsel extensively cross–examined John Doe and developed the impeachment material which had been disclosed.

The record of this case is unlike that in either *Alford* or *Smith*. The defense was not denied the opportunity to develop the information necessary to attack the credibility of the witness. The defense was not denied access to the true identity of the witness. The withholding of the witness' true name was limited to the jury and the public. Justice White in his concurring opinion in *Smith* specifically recognized as an exception "inquiries which tend to endanger the personal safety of the witness." 390 U.S. at 133–34, 88 S.Ct. at 751, and courts have repeatedly recognized that precautionary measures must be taken when a witness' safety is at stake. *See, e. g., U.S. v. Herbert*, 502 F.2d 890 (10th Cir. 1974), *cert. denied* 420 U.S. 931, 95 S.Ct. 1134, 43 L.Ed.2d 403; *U.S. v. Smaldone*, 484 F.2d 311 (10th Cir. 1973), *cert. denied* 415 U.S. 915, 94 S.Ct. 1411, 39 L.Ed.2d 469; *U.S. v. Saletko*, 452 F.2d 193 (7th Cir. 1971), *cert. denied* 405 U.S. 1040, 92 S.Ct. 1311, 31 L.Ed.2d 581.

*State v. Baumann*, 125 Ariz. 404, 610 P.2d 38 (1980), presented an analogous situation to the case at bar in that the witness' current address was withheld over objection. In *Baumann* we upheld the trial court's exercise of discretion because the witness had been thoroughly cross–examined on every aspect relating to the case and to his credibility.

▮ As in *Baumann*, appellant took advantage of the ample opportunities presented to impeach John Doe. All aspects of the case and factors bearing on credibility were explored. Appellant was not prejudiced by withholding John Doe's real name from the

jury. There was no error in the ruling of the trial judge on this point.

Appellant urges us to hold that statements by the defendant made during incarceration were involuntary despite a clear waiver in each instance of his *Miranda* rights. Appellant concedes that the record does seem to suggest that the statements were made voluntarily and in fact trial counsel did not object to their admission into evidence but, relying on *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977), he asserts that any questioning during incarceration without the knowledge, approval or participation of counsel denies him the assistance of counsel.

Appellant made three statements to the primary investigating officer in the case. The first statement was made December 9, 1977, as appellant was transported from El Paso to Bisbee. Counsel had not yet been appointed. The second statement was made on January 10, 1978. Although counsel had been appointed, appellant specifically requested that an officer come to talk with him about the crime. On January 12, 1978, appellant again specifically asked that the same officer visit him. The officer who took the statements testified that he asked appellant if defense counsel was aware of the meeting and did appellant want to talk to defense counsel prior to the interview. Appellant replied that he did not want to talk to defense counsel but wanted to go into more detail concerning the murders. In these second and third interviews appellant blamed the murders on the John Doe from El Paso.

The defense counsel had advised appellant not to make any statements until his version of how the crime occurred could be investigated, but appellant disregarded his advice.

■ Unlike *Brewer v. Williams, supra,* the appellant had requested the interview with the officer and appellant had been reminded of his right to his attorney present. Under the circumstances shown by the evidence, the trial court found that the defendant had waived his Sixth Amendment rights, and the record supports this finding.

Appellant complains that photographs of the victims' bodies were so gruesome and "heinous" that they inflamed the jury and that it was an abuse of discretion to allow them to be introduced into evidence.

■ Trial courts have great discretion in the admission of photographs. *State v. Smith*, 123 Ariz. 243, 599 P.2d 199 (1979); *State v. Morales*, 120 Ariz. 517, 587 P.2d 236 (1978). As long as the photograph has some probative value it is admissible even if inflammatory. *State v. Caldwell*, 117 Ariz. 464, 573 P.2d 864 (1977). Reasons for admission include identification of the deceased, to show the location of mortal wounds, to illustrate how the crime was committed, and to aid the jury in understanding testimony. *State v. Morales, supra.* The photographs at issue here illustrated witness' testimony in several particulars including how the crime was committed and the location of wounds. The photographs admitted in evidence were those which presented the relevant information in the least objectionable form. We find no abuse of discretion in the admission of the photographs.

Appellant contends that he was denied a fair trial by the admission into evidence of a bloodstained pillow with a bullet hole in it. The pillow had been found under Mrs. Thumm's head. A bullet jacket[1] found in the pillow matched a bullet core[2] found among the clothes appellant had left in his El Paso hotel room. Laboratory tests on the bullet core revealed fragments of organic matter that could have been bone and fibers that were similar to those of the pillow cover. Thus the prosecution argued that the pillow was a necessary link in this chain of evidence substantially linking appellant with the crimes.

---

1. A bullet jacket is the copper alloy outer shell of what is known as a jacket bullet which contains a lead core surrounded by a copper alloy shell.

2. The lead portion of the bullet.

Under Rule 403, Rules of Evidence, 17A A.R.S., otherwise relevant evidence is properly excluded if its probative value is outweighed by various factors including unfair prejudice.

 *The weighing and balancing un-der* Rule 403 is within the discretion of the trial court and will not be disturbed on appeal unless it has been clearly abused. *State v. Smith, supra.* If gruesome evidence is admitted for the sole purpose of inflaming the jury, we will of course reverse on appeal. *State v. Steele,* 120 Ariz. 462, 586 P.2d 1274 (1978). This was not the case here, and we find no abuse of discretion by the trial court in allowing the admission of evidence of the pillow.

The appellant contends he was denied the right to a public trial because the courtroom was closed to members of the public during the trial. The incident referred to by appellant occurred on the morning of June 21, 1978, when the courtroom was not available to members of the public for about 30 minutes. A deputy sheriff had advised spectators that they must wait for the morning recess before entering the courtroom to avoid distracting the proceedings. The matter was called to the trial court's attention, and the trial judge made it clear that no such restriction had ever been authorized or approved by him.

 The trial judge denied the defense motion for mistrial. The trial court found that the incident had been of extremely short duration, immediately corrected when discovered, and there had been no prejudice to the defense. We agree with the ruling of the trial court, and we note that the incident is similar to that described in *State v. Von Reeden,* 104 Ariz. 404, 454 P.2d 149 (1969), where we also concluded that the defendant's constitutional right to a public trial had not been violated when the courtroom had been closed to the public for a brief period of time.

 Appellant argues without citation of authority that the trial court erred in denying a request for a curative instruction regarding the reason for the time lapse between the preliminary hearing and appellant's explanation as to how the murders occurred. When first arrested in El Paso, appellant signed a statement explaining his presence in El Paso as a vacation. Appellant's preliminary hearing was held on December 15, 1977, and on January 10, 1978, appellant gave a different story blaming the murders on the John Doe from El Paso. The prosecutor argued in closing that this second story was concocted. Defense counsel asked for a curative instruction directing the jury not to consider this time lapse because there was a legal explanation for it. Defense counsel then stated to the trial court that he had directed appellant not to give the second statement until after investigation. This explanation for the time lapse was not in evidence. The trial court declined to give a curative instruction because such an instruction would be a comment on the evidence, would involve discussing matters not in the record and because the prosecutor's remarks were a fair comment on the evidence.

The ruling of the trial court was correct. There was no evidence in the record to support the instruction.

 Appellant argues that a flight instruction was inappropriate in the case at bar because appellant was neither pursued after he left the scene of the crimes nor did he conceal himself. Merely leaving the scene of a crime is not evidence of flight. Before a flight instruction can be given there must be evidence of open flight as upon pursuit, or there must be evidence of concealment. *State v. Rodgers,* 103 Ariz. 393, 442 P.2d 840 (1968); *State v. Smith,* 113 Ariz. 298, 552 P.2d 1192 (1976). The manner of leaving the scene of the crime must reveal a consciousness of guilt. *State v. Bailey,* 107 Ariz. 451, 489 P.2d 261 (1971); *State v. Rodgers, supra.* Even without pursuit, a defendant's manner of leaving the scene may manifest consciousness of guilt. *State v. Lujan,* 124 Ariz. 365, 604 P.2d 629 (1979).

 Appellant suddenly left the ranch which had been home for a year without a

word to anyone. He left no information of where he was going. The tires on all vehicles remaining at the ranch were slashed. Appellant was found in possession of his employers' car and credit card. At the time he left the ranch the appellant was not pursued by the police, but we conclude that there was sufficient evidence to show that appellant's leaving was in order to avoid arrest and with a consciousness of guilt. It was proper to give a flight instruction.

In passing, we note that the flight instruction given in this case adequately covered the issue, but the Recommended Arizona Jury Instruction on flight is the preferred one.

■■■■ Appellant also claims the trial court erred in refusing to give several other instructions tendered by the defense. We have carefully examined the instructions and reiterate our holding in *State v. Taylor,* 109 Ariz. 267, 508 P.2d 731 (1973) that if the issues are adequately covered by the instructions given, it is not error to refuse to single out a particular element for a special instruction. The instructions, read as a whole, adequately state the law. *State v. Childs,* 113 Ariz. 318, 553 P.2d 1192 (1976). We find no error.

■■■■ *State v. Watson,* 120 Ariz. 441, 586 P.2d 1253, *cert. denied* 440 U.S. 924, 99 S.Ct. 1254, 59 L.Ed.2d 478 (1979), and *State v. Richmond,* 114 Ariz. 186, 560 P.2d 41 (1976), *cert. denied,* 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1101 (1977) are dispositive of appellant's issue regarding the constitutionality of Arizona's death penalty statute.

As to the continued vitality of the *Watson* decision, we have repeatedly reaffirmed *Watson* in recent decisions. *See, e. g., State v. Evans,* 124 Ariz. 526, 606 P.2d 16 (1980); *State v. Arnett,* 125 Ariz. 201, 608 P.2d 778 (1980); *State v. Mata,* 125 Ariz. 233, 609 P.2d 48 (1980). We continue to adhere to the views expressed in *Watson.*

■■■■ Appellant challenges the trial court's imposition of the death penalty, asserting that the trial court erroneously found three aggravating factors and no mitigating factors. We note that pursuant to *State v. Watson, supra,* which had been rendered during the mitigation hearing, the trial court continued the hearing on sentencing for one week to allow appellant to present any and all mitigating factors. Defense counsel argues that the trial court erroneously ordered that the state could present any aggravating circumstances, not limited to the statutory aggravating circumstances. The record reveals, however, that the state relied upon the evidence presented during the trial for the aggravating circumstances. No new evidence on behalf of the state was presented at the sentencing hearing. Also, in closing argument at the hearing, the prosecutor stated that he was relying solely upon the statutory aggravating circumstances. Thus the trial court's order allowing the state to present aggravating circumstances in addition to those in the statute, although clearly erroneous, resulted in no prejudice to appellant.

The trial court found the following aggravating factors:

1) That appellant created a grave risk of death to a second victim, Mrs. Thumm, in shooting Mr. Thumm in the hallway of their home;

2) that appellant committed the murders of Mr. and Mrs. Thumm with the expectation of receiving something of pecuniary value, to–wit: Credit cards, jewelry and an automobile;

3) that appellant committed the offenses in an especially cruel and depraved manner.

First we address the "grave risk of death" issue. In *State v. Doss,* 116 Ariz. 156, 568 P.2d 1054 (1977), we affirmed the trial court's finding that this aggravating circumstance was present where the defendant shot the victim in a crowded college auditorium and in fact wounded another student. In *State v. Blazak,* 114 Ariz. 199, 560 P.2d 54 (1977), a similar finding was affirmed where the defendant shot the victims and injured another person in a bar with several people in it.

■■■■ Although it is unclear in the case at bar exactly where Mrs. Thumm was at the

time of Mr. Thumm's death, the evidence indicated that she was in another room. Even given the ricocheting of bullets, Mrs. Thumm was not close enough to be within any sort of "zone of danger." This is not the sort of crowded bar or auditorium situation present in *Blazak* and *Doss.* Thus, we find that the trial court erroneously found grave risk of death as an aggravating circumstance.

The trial court also found that appellant committed the murders with the expectation of receiving something of pecuniary gain. A.R.S. § 13–454(E)(5) [3] reads:

> "The defendant committed the offense as consideration for the receipt, or in expectation of the receipt, of anything of pecuniary value."

Appellant contends that the trial court incorrectly concluded that the above aggravating circumstance was present in this murder. He argues that the clear import of the fifth aggravating circumstance is that it applies only to the "hired gun" situation. Since there is no evidence that the appellant was hired or expected to be paid for killing the victims, he contends that the evidence does not justify the finding made by the trial court.

■ We do not read the statute in the limited fashion suggested by appellant. In *State v. Madsen*, 125 Ariz. 346, 609 P.2d 1046 (1980), we held that A.R.S. § 13–454(E)(5) applied to a murder committed for financial gain. We noted that if the receipt of money is established as a cause of the murder then the fifth aggravating circumstance would have been established. In *Madsen* we rejected the state's contention that the evidence proved that the defendant murdered his wife to collect the life insurance proceeds. We pointed out, however, that if the murder had been committed for a financial motivation it would have constituted an aggravating circumstance.

■ Unlike *Madsen* the evidence in this case supports the position of the trial court that the murder of the Thumms was committed for financial gain. After killing the Thumms the appellant took their credit cards, some money, two valuable diamond rings, and their 1976 Chevrolet station wagon. The circumstances surrounding the total episode reflect that the expectation of financial gain was a cause of the murders.

Another aggravating circumstance found by the trial court was that the murders were committed in an especially cruel and depraved manner. A.R.S. § 13–454(E)(6); A.R.S. § 13–703(E)(6), 1978 Criminal Code. The language of (E)(6) has been the subject of several of our decisions. *State v. Richmond, supra; State v. Knapp*, 114 Ariz. 531, 562 P.2d 704 (1977); *State v. Watson, supra; State v. Ceja*, 126 Ariz. 35, 612 P.2d 491 (1980). As pointed out in *Knapp* the words used have meanings that are clear to a person of average intelligence and understanding. In *Knapp* we set out the definitions used by the dictionary for the terms heinous, cruel and depraved.

In the second *Ceja* case we pointed out that the cruelty referred to in the statute involved the pain and the mental and physical distress visited upon the victims. Heinous and depraved as used in the same statute meant the mental state and attitude of the perpetrator as reflected in his words and actions. We also noted in the second *Ceja* that it was not necessary that all three elements, heinous, cruel, or depraved, be present in the murder. The statutory expression is in the disjunctive, so either all or one could constitute an aggravating circumstance.

■ The trial judge found the murder to be committed in an especially cruel manner. As defined by our previous decisions, the evidence does not support this finding. There is no evidence that any of the victims suffered any pain. The fatal wounds appear to have been delivered at vital parts of the bodies of the victims, and death ensued swiftly.

■ The trial judge found the murders to have been committed in an especially depraved manner. We agree.

---

**3.** Currently A.R.S. § 13–703(F)(5).

The evidence shows that the appellant was totally without regard for human life. Without justification or excuse, he killed four human beings. Two of his victims, the Thumms, had provided work and a home to appellant after he had been released from a juvenile correctional institution. The third victim, a young man seventeen years of age, had supposedly been a friend of the appellant. These factors did not dissuade him from his brutal task. His state of mind is illustrated by his comment to John Doe in El Paso to the effect that, "You should have seen Charley when I hit him with those cutters." In addition it must be noted that the appellant kept a spent bullet as a grisly souvenir of his crime. We believe that the evidence fully supports the finding of the trial court that the acts of the appellant constitute an aggravating circumstance under subsection (E)(6) of the statute.

In mitigation the appellant points out his youth (20 years of age), poor home life during his formative years, his lack of adult criminal record, and his emotional problems produced by an anti-social personality. All of which appellant argues should require the conclusion that the mitigating circumstances are sufficiently substantial to call for leniency. The trial court found that there were no mitigating circumstances shown which were sufficiently substantial to call for leniency. Appellant suggested that the trial court did not consider any mitigation which was offered. We reject this conclusion and note that the trial judge carefully reviewed the evidence offered in mitigation. After such careful consideration, he concluded that it was not sufficiently substantial to call for leniency.

From our independent review of the evidence in capital cases, *State v. Richmond, supra,* we conclude that the aggravating circumstances described before have been established and the mitigating circumstances are not sufficiently substantial to call for leniency; therefore, the judgment and sentence are affirmed as to all counts.

STRUCKMEYER, C. J., and HAYS and CAMERON, JJ., concur.

GORDON, Justice (specially concurring):

Although I would affirm both the judgment and sentence, I disagree with the majority's conclusion that the killing of the Thumms was committed in expectation of the receipt of something of pecuniary value. Reading former A.R.S. § 13–454E(4) and (5) together, I believe that the Legislature intended only to include the situation where defendant is a hired killer.

A.R.S. § 13–454E(4) and (5) provides:

"4. The defendant procured the commission of the offense by payment, or promise of payment, of anything of pecuniary value.

"5. The defendant committed the offense as consideration for the receipt, or in expectation of the receipt, of anything of pecuniary value."

Paragraph 4 applies to the procurer of the offense whether he has paid the killer prior to the offense or has promised to pay after the murder has been committed. Paragraph 5 parallels the preceding paragraph by applying to the killer whether he has been paid at the time of the offense or expects to receive payment in the future.

By extending the meaning of A.R.S. § 13–454E(5) to the instant case, the majority has included a killing in the perpetration of a robbery as an aggravating circumstance. The Legislature, had it so intended, could have accomplished this result with more precise, specific language.