**James Dean CLARK,
Petitioner–Appellant,**

v.

**James R. RICKETTS, et al.,
Respondents–Appellees.**

No. 87–2560.

United States Court of Appeals,
Ninth Circuit.

Argued Feb. 9, 1988.
Submitted Sept. 28, 1989.
Decided Sept. 28, 1989.

Michael R. Urman, DeConcini, McDonald, Brammer, Yetwin, Lacy & Zimmerman, Tucson, Ariz., for petitioner-appellant.

Bruce M. Ferg, Asst. Atty. Gen., D. Ariz., Tucson, Ariz., for respondents-appellees.

Before FARRIS, BRUNETTI and THOMPSON, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

## FACTS

An Arizona jury convicted appellant James Dean Clark of four counts of first-degree murder. One of the four murder victims was fatally stabbed. Another was shot to death. A couple, Mr. and Mrs. Thumm, were shot and killed. The couple's credit cards and rings, a saddle, their car and several guns were stolen. Clark was apprehended, charged with the murders, tried and convicted. Following his convictions, a separate non-jury sentencing hearing was held by the trial judge pursuant to Ariz.Rev.Stat. 13–902.[1] The sentencing judge found three aggravating factors were present in the case:

(1) Clark created a grave risk of death to Mrs. Thumm after he first shot Mr. Thumm in the hallway of their home, Ariz. Rev.Stat. § 13–902(F)(3);

(2) Clark murdered the Thumms with the expectation of receiving some pecuniary gain—credit cards, jewelry and an automobile, Ariz.Rev.Stat. § 13–902(F)(5); and

(3) Clark committed the offenses in an especially cruel and depraved manner, Ariz. Rev.Stat. § 13–902(F)(6).

In mitigation, Clark asserted that he was only twenty years old at the time of the crimes, had a poor home life during his formative years, lacked any adult criminal record, suffered emotional problems stemming from his antisocial personality, and had been cooperative with the police. The sentencing judge found the mitigating factors not sufficiently substantial to warrant leniency and sentenced Clark to death on each of the four counts.

### A. Procedural History

Clark filed a direct appeal with the Arizona Supreme Court. That court found that the first aggravating circumstance was not present because Mrs. Thumm was actually in another room at the time Mr. Thumm was killed; therefore, she was not within the "zone of danger" contemplated by section 13–902(F)(3). *State v. Clark,* 126 Ariz. 428, 616 P.2d 888, 895–96, *cert. denied,* 449 U.S. 1067, 101 S.Ct. 796, 66 L.Ed.2d 612 (1980). The court further determined that none of the murders had been committed in an especially cruel manner because there was no evidence that any of the victims had suffered any pain. *Id.,* 616 P.2d at 896. The court upheld the trial judge's findings that the murders were committed for pecuniary gain and in a depraved manner. After independently reviewing all the evidence, the court concluded that the aggravating circumstances had been established and that the mitigating circumstances were not sufficiently substantial to call for leniency. *Id.* at 897. The Arizona Supreme Court also deter-

---

1. Clark was sentenced under Ariz.Rev.Stat. § 13–902, which was reenacted as section 13– 703 in 1978.

mined that Clark's sixth amendment right to confront witnesses had not been violated when the prosecution called a John Doe witness to testify against him. *Id.* at 891–93.

After exhausting his state court remedies, Clark filed a petition for a writ of habeas corpus in the United States District Court for the District of Arizona pursuant to 28 U.S.C. § 2254. His petition was denied by summary judgment and this appeal followed.

**B.** *Issues on Appeal*

We consider three issues on appeal:

1. Whether Clark's sixth amendment right of confrontation was violated when the district court precluded him from eliciting, during cross-examination, the name and address of a government "John Doe" witness.

2. Whether the district court erred in determining that Clark had waived any claim of constitutional error stemming from a probation officer's failure to apprise Clark of his *Miranda* rights and his right to counsel prior to conducting a presentence interview upon which the sentencing judge relied in sentencing Clark to death.

3. Whether the Arizona death penalty statute under which Clark was sentenced to death, Ariz.Rev.Stat. § 13–902, is constitutional.

## ANALYSIS

1. *Sixth Amendment Right of Confrontation*

■ Clark argues his sixth amendment right of confrontation was violated when he was not permitted to elicit, on cross-examination, the name and address of the government's John Doe witness. Clark's argument is unpersuasive. Prior to trial, the government disclosed John Doe's true name and felony record to Clark. The defense had every opportunity to discover material which might be used to impeach Doe's credibility. Although Clark was not provided with John Doe's address, nor was he permitted to elicit this information on cross-examination, these circumstances, contrary to Clark's contention, did not violate his right of confrontation under *Smith v. Illinois,* 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968).

In *Smith v. Illinois,* the accused did not have an opportunity to discover the true name or address of the principal witness against him. The Court stated:

[W]hen the credibility of a witness is in issue, the very starting point in "exposing falsehood and bringing out the truth" through cross-examination must necessarily be to ask the witness who he is and where he lives. The witness' name and address open countless avenues of in-court examination and out-of-court investigation. To forbid this most rudimentary inquiry at the threshold is effectively to emasculate the right of cross-examination itself.

*Id.* at 131, 88 S.Ct. at 750 (footnote omitted).

In the present case, Clark knew John Doe's true name and his felony record well in advance of trial. This information provided Clark with the "avenues of in-court examination and out-of-court investigation" which the accused was denied in *Smith v. Illinois.* In any event, John Doe did testify at trial that he lived "on a religious retreat" in El Paso. This satisfied the concern expressed by the Supreme Court in *Smith v. Illinois* that an accused be given an opportunity to " 'place the witness in his proper setting' ". *Id.* at 132, 88 S.Ct. at 750 (quoting *Alford v. United States,* 282 U.S. 687, 692–94, 51 S.Ct. 218, 219–20, 75 L.Ed. 624 (1931)).

■ Finally, there is no absolute right of an accused to have a jury hear a witness's true name and address. *Smith v. Illinois* " 'does not establish a rigid rule of disclosure, but rather discusses disclosure against a background of factors weighing conversely, such as personal safety of the witness.' " *United States v. Rangel,* 534 F.2d 147, 148 (9th Cir.), *cert. denied,* 429 U.S. 854, 97 S.Ct. 147, 50 L.Ed.2d 129 (1976) (quoting *United States v. Cosby,* 500 F.2d 405, 407 (9th Cir.1974)). Trial judges have wide latitude to impose reasonable limits on cross-examination based on con-

cerns such as harassment, prejudice, confusion of the issues or the witness's safety. *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986); *see also Smith v. Illinois*, 390 U.S. at 133–34, 88 S.Ct. at 750–51 (questions tending to endanger personal safety of a witness go beyond proper bounds of cross-examination) (White, J., concurring); *United States v. Chavez–Vernaza*, 844 F.2d 1368, 1376 (9th Cir.1987) (cross-examination properly limited where witnesses revealed true names and occupations but not true addresses and defendant was allowed to obtain their addresses outside presence of jury); *United States v. Washington*, 797 F.2d 1461, 1474 (9th Cir.1986) (right of cross-examination may be restricted if necessary to protect personal safety of witnesses); *Rangel*, 534 F.2d at 148 (witness need not reveal true name, address and phone number where *in camera* evidence convinced judge witness's personal safety would be jeopardized by such disclosure).

In the present case, the trial judge ordered Doe's identity and address concealed from the jury after holding an *in camera* hearing. The court learned in the *in camera* proceeding that Doe was a Drug Enforcement Agency informant, that threats against his life had been made in the city where he lived, and that he still had cases pending in which he would give information. Based upon this information, the trial judge determined Doe's life would be endangered by publicly revealing his true name and address. Under these circumstances, the court did not err in forbidding cross-examination as to Doe's true name and address.

2. *Fifth Amendment and Sixth Amendment Claims Arising from Presentence Interview*

Clark alleges his fifth and sixth amendment rights were violated when the sentencing judge considered information obtained from him by a probation officer during a presentence interview. Clark asserts his fifth amendment right to be free from self-incrimination was violated because he was never informed either prior to or during the interview that he had the right to remain silent, or that anything he said could be used against him at the sentencing hearing. Clark further contends he was denied his sixth amendment right to counsel because he was never advised that he had a right to have counsel present during the interview.

In his state court review proceedings, Clark raised all of the issues now before this court, except the constitutional claims involving his presentence interview. Clark attempted to go back to state court to raise these claims by moving in the district court for leave to file a petition seeking additional relief in state court. The district court denied this motion on the ground that such a petition would be futile because it was procedurally barred under Ariz.R.Crim.P. 32.2(a), (c).[2] *See Tacho v. Martinez*, 862 F.2d 1376, 1379–80 (9th Cir. 1988) (failure to comply with Rule 32 results in procedural default). We agree with the district court. Insofar as obtaining a ruling on Clark's federal habeas petition was concerned, it would have been pointless to send him back to state court. He had defaulted in state court on his presentence interview claims. As a result, he could get no relief on these claims in state court. Consequently, there was nothing more he could do in state court to establish a foundation for federal habeas review. *See Fay v. Noia*, 372 U.S. 391, 435, 83 S.Ct. 822, 847, 9 L.Ed.2d 837 (1963); *overruled on other grounds, Stone v. Powell*, 428 U.S. 465, 494, 96 S.Ct. 3037, 3052, 49 L.Ed.2d 1067 (1976).

**2.** Rule 32.2 provides in pertinent part:

   a. Preclusion. A petitioner will not be given relief under this rule based upon any ground:

    . . . .

   (3) Knowingly, voluntarily and intelligently not raised at trial, on appeal, or in any previous collateral proceeding.

    . . . .

   c. Inference of Waiver. The court may infer from the petitioner's failure to appeal or to raise an issue on appeal after being advised by the sentencing judge of the necessity that he do so, or his failure to raise any ground then available to him in a previous Rule 32 proceeding in which he was represented by counsel, that he knowingly, voluntarily and intentionally relinquished the right to do so.

■ This left Clark with constitutional claims which he had not presented to the highest state court with jurisdiction to consider them. This would not preclude federal habeas review, however, if Clark could show cause for his state court default and prejudice stemming from the alleged constitutional violation. *Murray v. Carrier,* 477 U.S. 478, 494–95, 106 S.Ct. 2639, 2648–49, 91 L.Ed.2d 397 (1986); *Allen v. Risley,* 817 F.2d 68, 69 (9th Cir.1987). The district court determined that because Clark did not make a showing of cause for his failure to raise his presentence interview claims before the Arizona Supreme Court, and could not show that he was prejudiced by the material considered by the state court sentencing judge, these claims had been waived. We agree.

■ The existence of cause "must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. at 488, 106 S.Ct. at 2645. The cause-and-prejudice standard ordinarily requires a showing of both elements. *Id.* at 494–95, 106 S.Ct. at 2648–49. To be relieved of the burden of showing cause, a petitioner must allege either that (1) the constitutional violation alleged probably resulted in the conviction of an innocent person; or (2) the procedural default was the product of ineffective assistance of counsel. *Id.* at 495–96, 106 S.Ct. at 2649–50; *Tacho,* 862 F.2d at 1380–81.

Clark has alleged no fact, and he has presented no argument, which would suggest any cause for his state court procedural default. He alleges nothing to suggest that the claimed constitutional violations resulted in his conviction. *See Smith v. Murray,* 477 U.S. 527, at 537–38, 106 S.Ct. 2661, 2667–68, 91 L.Ed.2d 434 (1986). He does not argue that his state court default was caused by ineffective assistance of counsel, or that his legal representation on appeal was in any way defective. *See Murray v. Carrier,* 477 U.S. at 496–97, 106 S.Ct. at 2649–50. Thus, Clark has failed to show "cause," and has failed to bring his

case within the ambit of those exceptions which permit federal habeas corpus review when cause is lacking. *See id.*

Clark contends that the Supreme Court's decision in *Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), mandates that information from a presentence interview obtained in the way the information was obtained from Clark should not be admitted at a sentencing hearing. We do not reach this question, however, because the proffered issue goes to the *prejudice* prong of the cause-and-prejudice standard, not to whether *cause* exists for Clark's failure to include his claims of constitutional error in his state court review proceedings. Clark's *Estelle v. Smith* argument does not provide a basis for federal habeas review in the absence of a showing of cause. *See Dugger v. Adams,* — U.S. —, 109 S.Ct. 1211, 1217 n. 6, 103 L.Ed.2d 435 (1989); *cf. Murray v. Carrier,* 477 U.S. at 488, 106 S.Ct. at 2645.

We conclude that Clark's fifth and sixth amendment claims based upon the sentencing judge's consideration of information obtained during Clark's presentence interview were waived by Clark's failure to allege any cause for not presenting these claims to the Arizona Supreme Court.

3. *Sentencing*

■ Clark was convicted by a jury. Thereafter, he was sentenced to death by the trial judge following a non-jury sentencing hearing. Although not argued on appeal, Clark asserts in his habeas petition that Arizona's death penalty sentencing scheme violates his sixth amendment right to trial by jury. Although we do not ordinarily consider an issue on appeal not specifically raised in an appellant's opening brief, we have discretion to consider such an issue when the appellee is not misled and the issue has been fully explored. Fed.R.App.P. 28(a)(2); *see also Int'l Union of Bricklayers & Allied Craftsman Local Union No. 20, AFL–CIO v. Martin Jaska, Inc.,* 752 F.2d 1401, 1404 n. 4 (9th Cir.1985) (citing *Ellingson v. Burlington Northern, Inc.,* 653 F.2d 1327, 1332 (9th Cir.1981)). We do so here.

In *Adamson v. Ricketts*, 865 F.2d 1011, 1025–27, 1029 (9th Cir.1988) (en banc), we recently held that the Arizona death penalty sentencing statute is unconstitutional because, among other things, it does not provide for trial by jury on the aggravating circumstance question. We reasoned in *Adamson* that because a person may not be sentenced to death for any crime unless a sentencing judge determines that one of the aggravating factors exists and there are no mitigating factors sufficient to warrant leniency, the aggravating factors operate as an element of the offense of murder punishable by death; therefore, a defendant charged with capital murder has a constitutional right to a jury trial on the question of the existence of aggravating factors. *Id.* at 1026–27.

As in *Adamson*, the aggravating factors in Clark's case which resulted in his death sentence were established by the Arizona trial court sitting without a jury, pursuant to Arizona's death penalty sentencing statute. Ariz.Rev.Stat. § 13–902, reenacted in 1978 as Ariz.Rev.Stat. § 13–703. Bound by *Adamson*, we must reverse Clark's death sentence.[3]

## CONCLUSION

We affirm the district court's determination that Clark's sixth amendment right of confrontation was not violated by the state court's refusal to permit Clark to elicit from the government's John Doe witness, on cross-examination, the witness's true name and address. We also affirm the district court's determination that Clark waived his fifth and sixth amendment claims based upon the sentencing judge's consideration of information obtained from Clark in his presentence interview. Finally, controlled by this circuit's recent decision in *Adamson v. Ricketts*, 865 F.2d 1011 (9th Cir.1988) (en banc), we reverse the district court and remand with instructions to grant the writ of habeas corpus unless

the State, within a reasonable time, imposes a sentence other than death.

AFFIRMED IN PART, REVERSED IN PART, and REMANDED.

---

**3.** On appeal Clark also challenges his death sentence on the ground that the state sentencing court failed to make express findings to reflect its consideration of the mitigating factors Clark presented. Because we reverse Clark's sentence of death on the ground that, under *Adamson*, his sixth amendment right to trial by jury was violated when he was denied a jury trial on the issue of the existence of aggravating circumstances, we do not reach Clark's mitigating circumstances argument.