James Dean CLARK, Petitioner–
Appellant,

v.

Samuel A. LEWIS, Director, Arizona De-
partment of Corrections and Roger
Crist, Warden, Arizona State Prison, Re-
spondents–Appellees.

No. 93–99005.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 13, 1993.

Opinion Filed April 13, 1993.

Opinion Withdrawn July 1, 1993.

Filed July 1, 1993.

As Amended Oct. 8, 1993.

Timothy J. Foley, San Francisco, CA, for petitioner-appellant.

Bruce Ferg, Asst. Atty. Gen., Phoenix, AZ, for respondents-appellees.

Before: FARRIS, BRUNETTI and THOMPSON, Circuit Judges.

### ORDER

The opinion filed April 13, 1993 is withdrawn. It is replaced with an order for publication filed contemporaneously herewith.

### ORDER

DAVID R. THOMPSON, Circuit Judge:

The district court dismissed James Dean Clark's second federal habeas corpus petition challenging his state convictions on four counts of first-degree murder and sentence of death. The district court had jurisdiction under 28 U.S.C. §§ 2241(a) and 2254. It refused to issue a certificate of probable cause to permit Clark to appeal to this court. *See* 28 U.S.C. § 2253; Fed.R.App.P. 22(b).

■ We have jurisdiction to determine whether to issue a certificate of probable cause, *id.*, and to entertain Clark's application for such a certificate on its merits. *Burwell v. Teets*, 350 U.S. 808, 809, 76 S.Ct. 98, 98, 100 L.Ed. 726 (1955); *Rogers v. Teets*, 350 U.S. 809, 76 S.Ct. 98, 100 L.Ed. 726 (1955). We also have authority to "lay down a procedure ... to follow for the entertainment of such applications on their merits." *In re Application of Burwell*, 350 U.S. 521, 522, 76 S.Ct. 539, 540, 100 L.Ed. 666 (1956).

We have adopted rules for state habeas corpus death penalty cases. *See generally* 9th Cir.R. 22–1 et seq. Under these rules, if the panel to which the case has been assigned votes unanimously to deny an application for a certificate of probable cause, or if a majority of the panel votes to deny an accompanying motion for a stay of execution, "it shall enter an order setting forth the issues presented and the reasons" for doing so. 9th Cir.R. 22–4(d)(3) & (4) (June, 1993).

The panel to which this case has been assigned has considered Clark's application for a certificate of probable cause on the merits. For the reasons hereafter stated, the panel has voted unanimously to deny his application. Clark's application for a stay of execution is denied and his appeal is dismissed.[1]

## FACTS AND PROCEEDINGS

James Dean Clark was convicted of four counts of first-degree murder for murdering four persons on December 4, 1977. For a year prior to the murders Clark worked as a wrangler at the Cochise Lodge and Guest Ranch, a dude ranch owned by Charles and Mildred Thumm and located near Elfrida, a rural town in Cochise County, Arizona.

On December 3, 1977, Clark had dinner at the lodge with Mr. and Mrs. Rush Allen, guests at the lodge, and with George Martin and Gerry McFerron, wranglers at the ranch. After dinner, the Allens went to Tombstone with Martin. McFerron and Clark called Janie Hendrickson, who met them at the lodge. The three of them went to the Elfrida tavern and then to a disco lounge in Douglas. Hendrickson and Clark went into the disco lounge. McFerron had drunk too much. He vomited and stayed outside.

The three returned to the lodge between 1:00 and 1:30 a.m., and Hendrickson left in her car. Clark did not appear to be intoxicated. During the evening, McFerron told Hendrickson that Clark was dangerous when he was drunk. Clark overheard the statement, but he simply chuckled and made no comment. Clark had been playing with a .357 Magnum pistol at one point during the evening.

After McFerron went to bed, Clark entered the wranglers' quarters and stabbed to death Martin, an older wrangler who was passed out in his bed. Clark then fatally shot McFerron as the young wrangler slept in his sleeping bag. Clark picked up a .357 Magnum from McFerron's room, walked from the wranglers' quarters to the Thumms' house and shot to death both Charles and Mildred Thumm.

A pathologist testified that Martin died of seven stab wounds to the chest, which penetrated the heart and lungs. McFerron died of three gunshot wounds to the head, one in the temple, one in the ear, and one to the top of the head. Charles Thumm was shot three times, once in the chest, once in the left shoulder and once, from a distance of three to four inches, in the head. Mildred Thumm died of a gunshot wound near the left earlobe, fired from a distance of approximately two to six inches.

Clark slashed all the tires on the vehicles at the ranch and then fled the area in the Thumms' station wagon. Clark took with him rings and credit cards belonging to the Thumms, guns, including those used in the murders, and a saddle. Clark drove to El Paso, Texas, where he sold Mildred Thumm's engagement and dinner rings to a jeweler. Clark was apprehended a few days later in El Paso, Texas.

Clark volunteered the statement to the El Paso police that he had been given permission to use the car and some credit cards to pick up his girlfriend and take her back to Arizona to get married. A spent lead bullet, which appeared to have organic matter on it, was removed from the pocket of a jacket in Clark's hotel room. When accused of killing the Thumms, Martin and McFerron, Clark stated that he might have killed them, but he did not remember.

At the preliminary hearing on December 15, 1977, John Doe, a confidential informant for the Drug Enforcement Agency ("DEA"), testified over the objection of the defense. John Doe wore a ski mask, but removed it briefly during the hearing so that Clark could observe his face. Before the trial, the defense was provided with Doe's true name,

1. On April 13, 1993, we filed an opinion denying Clark's application for a certificate of probable cause, denying his application for a stay of execution, and affirming the district court's dismissal of his petition for a writ of habeas corpus. *Clark v. Lewis,* No. 93–99005, slip op. 3947, 3968, 1993 WL 120344 (9th Cir. Apr. 13, 1993). A death penalty en banc court reviewed this decision and did not grant Clark a stay of execution. *See* 9th Cir.R. 22–4(e)(3). He was executed on April 14, 1993. This order replaces the opinion filed April 13, 1993.

date of birth, place of residence, and prior criminal record.

Prior to John Doe's testimony, a hearing was held in chambers. The trial court ordered that the record of these proceedings be sealed. John Doe stated his true name and his location in El Paso, Texas. John Doe testified that he felt his life was in danger, and had received threats because he was a paid informant for the DEA. He was therefore allowed to testify as John Doe.

Before the jury, John Doe testified that he had met Clark in the late night hours of December 4, 1977, at a bar in El Paso, Texas and, the next day, at Clark's request, he bought heroin for Clark and sold four guns Clark had in his possession, including a .357 Magnum. John Doe also testified that Clark said he had already killed three people in "Elvira," Arizona. Clark told the primary investigating officer in January 1978 that John Doe committed the murders.

An Arizona jury convicted Clark of four counts of first-degree murder. Following his convictions, a separate non-jury sentencing hearing was held by the trial judge pursuant to Arizona Revised Statute § 13–902. The sentencing judge found three aggravating factors present in the case:

1. Clark created a grave risk of death to a second victim, Mildred Thumm, in shooting Charles Thumm in the hallway of their home, Ariz.Rev.Stat. § 13–902(F)(3);

2. Clark murdered Mildred and Charles Thumm with the expectation of receiving something of pecuniary value—such as the credit cards, jewelry and automobile, Ariz. Rev.Stat. § 13–902(F)(5); and

3. Clark committed the offenses in an especially cruel and depraved manner, Ariz. Rev.Stat. § 13–902(F)(6).

In mitigation, Clark asserted that he was only twenty years old at the time of the crimes, had a poor home life during his formative years, lacked any adult criminal record, suffered emotional problems stemming from his antisocial personality, and had been cooperative with the police. The sentencing judge found the mitigating factors not sufficiently substantial to warrant leniency and sentenced Clark to death on each of the four counts.

Clark filed a direct appeal with the Arizona Supreme Court. That court found that the first aggravating circumstance was not present because Mildred Thumm was actually in another room at the time Charles Thumm was killed and therefore she was not within the zone of danger contemplated by section 13–902(F)(3). *State v. Clark*, 126 Ariz. 428, 436, 616 P.2d 888, 896, *cert. denied*, 449 U.S. 1067, 101 S.Ct. 796, 66 L.Ed.2d 612 (1980). The court further determined that none of the murders had been committed in an especially cruel manner because there was no evidence that any of the victims had suffered any pain. *Id.* The court upheld the sentencing judge's findings that the murders were committed for pecuniary gain and in a depraved manner. *Id.*

After independently reviewing all the evidence, the court concluded that the aggravating circumstances had been established and that the mitigating circumstances were not sufficiently substantial to call for leniency. *Id.* 616 P.2d at 897. The court also determined that Clark's Sixth Amendment right to confront witnesses had not been violated when the prosecution called the John Doe witness to testify against him. *Id.* at 891–93.

In August 1987, after pursuing his state court remedies, Clark filed his first petition for a writ of habeas corpus in the United States District Court for the District of Arizona, pursuant to 28 U.S.C. § 2254. His petition was denied by summary judgment and Clark appealed to this court. We issued an opinion in September 1989, holding that Clark was entitled to be resentenced because Arizona's death penalty statute had been held unconstitutional in *Adamson v. Ricketts*, 865 F.2d 1011 (9th Cir.1988), *cert. denied*, 497 U.S. 1031, 110 S.Ct. 3287, 111 L.Ed.2d 795 (1990). *Clark v. Ricketts*, 886 F.2d 1152 (9th Cir.1989). Thereafter, in *Walton v. Arizona*, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990), the Court held Arizona's death penalty statute to be constitutional. We granted rehearing in *Clark v. Ricketts*, withdrew the original opinion and issued a new one, upholding the denial of habeas relief in all respects, including the sentencing

issues. *Clark v. Ricketts,* 958 F.2d 851 (9th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 117, 121 L.Ed.2d 73 (1992).

In September 1992, Clark filed his third state petition for post-conviction relief in Cochise County Superior Court, Arizona. In January 1993, the Arizona Supreme Court set Clark's execution date for April 14, 1993. On February 9, 1993, the Cochise County Superior Court summarily dismissed Clark's third petition for post-conviction relief. Clark filed a petition for rehearing, which that court denied on March 26, 1993.

On April 1, 1993, Clark mailed a petition for review to the state trial court, and on April 2, 1993, he filed a motion in the Arizona Supreme Court to stay his execution.

On April 11, 1993, Clark filed in the United States District Court for the District of Arizona a second federal habeas petition, an emergency application for stay of execution, a motion to vacate and reopen judgment pursuant to Federal Rule of Civil Procedure 60(b), a motion for an evidentiary hearing, and a motion for leave to conduct discovery.

In this second habeas petition, Clark raised ten claims of constitutional error. The district court held that upon review of the materials submitted by Clark, it could not discern any substantial ground upon which relief might be granted and denied Clark's emergency application for stay of execution. The court also concluded that it could not reach the merits of Clark's claims because the claims raised by Clark were either abusive or successive. The court, relying on *Sawyer v. Whitley,* —— U.S. ——, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992), and *McCleskey v. Zant,* 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991), determined that Clark failed to demonstrate cause and prejudice, which would excuse his failure to raise his claims earlier. Finally, the court concluded that the "ends of justice" did not require that Clark be given an opportunity to relitigate his previously litigated claims or litigate his new, but abusive claims.

The district court dismissed the second petition for writ of habeas corpus and denied Clark's emergency application for a certificate of probable cause and stay of execution,

his Rule 60(b) motion to vacate and reopen judgment, his motion for an evidentiary hearing, and his motion for leave to conduct discovery. Clark filed a notice of appeal and applied to this court for a certificate of probable cause and a stay of execution of his death sentence. While this application was pending, the Arizona Supreme Court denied his motion for a stay of execution.

## DISCUSSION

■ This court should grant an application for a certificate of probable cause to appeal only if the petitioner makes a substantial showing that he has been denied a federal right. *Barefoot v. Estelle,* 463 U.S. 880, 893, 103 S.Ct. 3383, 3394, 77 L.Ed.2d 1090 (1983). To make this substantial showing, a petitioner must demonstrate that the issues are "debatable among jurists of reason," that a court could resolve the issues differently, or that the issues are "adequate to deserve encouragement to proceed further." *Id.* at 893 n. 4, 103 S.Ct. at 3394 n. 4.

■ The Supreme Court, in *Sawyer,* restated under what circumstances a federal court could reach the merits of successive, abusive, or defaulted claims raised in a habeas corpus petition:

> Unless a habeas petitioner shows cause and prejudice, *see Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), a court may not reach the merits of: (a) *successive claims* which raise grounds identical to grounds heard and decided on the merits in a previous petition, *Kuhlmann v. Wilson,* 477 U.S. 436, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986); (b) new claims, not previously raised which constitute an *abuse of the writ, McCleskey v. Zant,* 499 U.S. [467], 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991); or (c) *procedurally defaulted claims* in which the petitioner failed to follow applicable state procedural rules in raising the claims. *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).... [E]ven if a state prisoner cannot meet the cause and prejudice standard a federal court may hear the merits of the successive claims if the failure to hear the claims would constitute a "miscarriage of justice."

*Sawyer*, — U.S. at —, 112 S.Ct. at 2518 (emphasis in original); *see also Campbell v. Blodgett*, 997 F.2d 512, 516–17 (9th Cir.1993) (reviewing third federal habeas corpus petition); 28 U.S.C. §§ 2244(b), Rule 9 of Rules Governing Section 2254 Cases (1988). An evidentiary hearing is not necessary to allow a petitioner to show cause and prejudice if the court determines as a matter of law that he cannot satisfy the standard. *Campbell*, 997 F.2d at 524.

■ Clark argues the district court erred in rejecting his claims as successive and abusive. He contends the standards permitting denial without consideration of the merits were not met. Clark also argues the ends of justice exception requires a determination on the merits, and the "actual innocence" formulation announced in *Sawyer* should not be applied to his petition, or if it is that he is actually innocent of the death penalty.[2] We conclude that the district court did not err by finding Clark's claims successive and abusive and the fundamental miscarriage of justice exception inapplicable.

■ For each claim, if the state pleads abuse of the writ, Clark must show cause for failing to raise his claim in his first federal habeas corpus petition and actual prejudice resulting from the error of which he complains. *See McCleskey*, 499 U.S. at —, 111 S.Ct. at 1470. Cause requires a showing of " 'some objective factor external to the defense impeded counsel's efforts' to raise the claim." *Id.* (quoting *Murray*, 477 U.S. at 488, 106 S.Ct. at 2645). The Court in *McCleskey* emphasized:

> Abuse of the writ doctrine examines *petitioner's* conduct: the question is whether petitioner possessed, or by reasonable means could have obtained, a sufficient basis to allege a claim in the first petition and pursue the matter through the habeas process.... If what petitioner knows or could discover upon reasonable investigation supports a claim for relief in a federal

habeas petition, what he does not know is irrelevant. Omission of the claim will not be excused merely because evidence discovered later might also have supported or strengthened the claim.

*Id.* 499 U.S. at —, 111 S.Ct. at 1472. We now address each of Clark's claims.

1. Failure of Arizona Supreme Court on Direct Appeal to Adequately Narrow a Facially Vague Aggravating Factor

Clark argues his federal constitutional rights under the Fifth, Eighth and Fourteenth Amendments were violated because a vague aggravating factor, without a proper narrowing definition, was used by the state courts in their weighing process to determine his sentence. Relying on *Richmond v. Lewis*, — U.S. —, 113 S.Ct. 528, 121 L.Ed.2d 411 (1992), Clark argues that the Arizona Supreme Court failed to cure the vagueness of the "especially heinous, cruel or depraved" aggravating factor relied on for Clark's death sentence. *See* Ariz.Rev.Stat. § 13–703(F)(6) (reenacted Ariz.Rev.Stat. § 13–902, the provision under which Clark was sentenced).

■ The state maintains this claim is successive because Clark formally withdrew it before the district court in his first federal habeas petition and because we addressed it in our disposition of the first federal habeas corpus petition. We agree. Clark's claim challenging the Arizona Supreme Court's narrowing of the vague statutory (F)(6) "depraved" aggravating factor is a successive claim.

■ To be entitled to review of a successive claim, Clark must demonstrate cause and prejudice, or establish that a denial of review would result in a fundamental miscarriage of justice. *Sawyer*, — U.S. at —, 112 S.Ct. at 2518. In the context of a successive claim, we have construed "cause" to mean "cause for bringing a petition that fails to present a new ground for relief." *Camp-*

---

2. In *Harris v. Vasquez*, 949 F.2d 1497, 1512 (9th Cir.1991), *reh'g en banc denied*, 961 F.2d 1449 (9th Cir.1992), we determined that the abuse of the writ standard announced in *McCleskey* did not create a new rule within the meaning of *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), and we applied *McCleskey* to

Harris's pending habeas corpus petition. Consistent with our analysis in *Harris*, and with the Supreme Court's application of the *Sawyer* rule to Sawyer himself, we apply the "actual innocence" standard announced in *Sawyer* to this case.

*bell,* at 524. Here, Clark has made no showing of any cause for again presenting the same vagueness claim we previously rejected. *See Clark,* 958 F.2d at 860 (rejecting vagueness challenge to "depraved" factor). However, even though Clark has not shown any cause for again presenting this successive claim, we must nonetheless consider whether a fundamental miscarriage of justice would result if we did not reach its merits.

■ The "miscarriage of justice" exception, sometimes referred to as the "ends of justice" exception, permits us to reach the merits of a successive claim if the petitioner supplements his claim of constitutional error with a colorable claim of actual innocence. *Sawyer,* — U.S. —, 112 S.Ct. at 2519 (citing *Kuhlmann,* 477 U.S. at 454, 106 S.Ct. at 2627). In a capital case, "actual innocence" can mean innocent of the death penalty. *See id.* — U.S. at —, 112 S.Ct. at 2520.

For Clark to show "actual innocence" of the death penalty, he must: (1) identify some constitutional error, and (2) show by clear and convincing evidence that but for the constitutional error no reasonable factfinder would have found him eligible for the death penalty under Arizona law. *See Sawyer,* — U.S. at — – —, 112 S.Ct. at 2519–20. These factors need not be considered in any particular order. Here it is plain that no constitutional error occurred, so we only address this factor.

■ Clark argues the Arizona Supreme Court committed constitutional error when it reviewed his sentence on direct appeal because in doing so it failed to adequately narrow the unconstitutionally vague "depraved" aggravating factor when weighing the aggravating factors against the mitigating circumstances. We reject this argument.

In applying the "depraved" aggravating factor to Clark's case, the Arizona Supreme Court adequately narrowed the factor. The court made clear the term "depraved" referred to "the mental state and attitude of the perpetrator as reflected in his words and actions." *Clark,* 616 P.2d at 896 (citing *State v. Ceja,* 126 Ariz. 35, 612 P.2d 491, 495 (1980); *State v. Knapp,* 114 Ariz. 531, 562 P.2d 704, 716 (1977); *State v. Blazak,* 114 Ariz. 199, 560 P.2d 54, 61 (1977)); *see also Clark,* 958 F.2d at 860.

Because the Arizona Supreme Court adequately narrowed the "depraved" factor, no constitutional error was committed. Clark's claim of "actual innocence" fails. *See Herrera v. Collins,* — U.S. — – —, 113 S.Ct. 853, 859–60, 122 L.Ed.2d 203 (1993).

2. **Failure of Arizona Supreme Court on Direct Appeal to Reweigh Factors**

■ Clark argues his right to protection from cruel and unusual punishment under the Eighth Amendment and his right to due process under the Fourteenth Amendment were violated because the Arizona Supreme Court, in reviewing his sentence on direct appeal, failed to reweigh the aggravating and mitigating circumstances following its determination that two of the four aggravating factors found by the sentencing judge were invalid. This claim is abusive because it was not raised in Clark's first federal habeas petition.

Clark attempts to establish the requisite cause to excuse his earlier failure to raise the alleged reweighing error by arguing that the "legal basis for [his] claim was not reasonably available" to his counsel handling his first federal habeas petition. *See McCleskey,* 499 U.S. at —, 111 S.Ct. at 1470. In support of this argument, Clark relies on *Richmond v. Lewis,* — U.S. —, 113 S.Ct. 528, 121 L.Ed.2d 411 (1992), decided after Clark filed his first habeas petition. In *Richmond,* the Court held a state reviewing court in a "weighing" state (Arizona) did not cure a sentence issued by a state sentencing court that relied on an invalid aggravating factor, because a majority of the reviewing court did not reweigh the remaining valid aggravating and mitigating circumstances or conduct a harmless error analysis. *Richmond,* — U.S. at —, 113 S.Ct. at 537.

Clark's reliance on *Richmond* to establish cause is misplaced. The principles of "close appellate scrutiny of the import and effect of invalid aggravating factors to implement the well-established Eighth Amendment requirement of individualized sentencing determinations in death penalty cases," which form the legal basis for Clark's reweighing claim, were

reasonably available before his first federal habeas petition. *Stringer v. Black,* —— U.S. ——, 112 S.Ct. 1130, 1136, 117 L.Ed.2d 367 (1992) (holding that *Clemons v. Mississippi,* 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990), which held a state reviewing court in a "weighing" state could cure an invalid sentence by reweighing the aggravating and mitigating circumstances or by conducting a harmless error analysis, did not announce a new rule within the meaning of *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989)); *see Zant v. Stephens,* 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983); *Eddings v. Oklahoma,* 455 U.S. 104, 110–12, 102 S.Ct. 869, 874–75, 71 L.Ed.2d 1 (1982); *Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980); *Lockett v. Ohio,* 438 U.S. 586, 601–05, 98 S.Ct. 2954, 2963–65, 57 L.Ed.2d 973 (1978) (plurality opinion); *Roberts v. Louisiana,* 431 U.S. 633, 636–37, 97 S.Ct. 1993, 1995, 52 L.Ed.2d 637 (1977).

■ If *Richmond* provided Clark with a new legal basis for his reweighing claim, a basis that was not reasonably available at the time of his first federal habeas petition in 1987, one would have to conclude that *Richmond* established a new rule not dictated by precedent existing when Clark's state court convictions and sentence became final in 1980. *See Stringer,* —— U.S. at ——, 112 S.Ct. at 1135. In this circumstance, Clark would be barred by *Teague* from relying on *Richmond* as a predicate for federal habeas relief because neither *Teague* exception would be available to apply such a "new rule" to Clark's case. *See Teague,* 489 U.S. 288, 109 S.Ct. 1060.

Although Clark has not made the requisite showing of cause for failing to raise his reweighing claim in his first federal habeas petition, this does not end our inquiry. We must also consider whether the ends of justice require that Clark's death sentence be set aside. *Sawyer,* —— U.S. at ——, 112 S.Ct. at 2519.

Clark's ends of justice argument is founded on the premise that the Arizona Supreme Court failed to conduct a new sentencing calculus in which it weighed only the valid aggravating factors against the mitigating circumstances. This premise is false. It is plain from the Arizona Supreme Court's opinion that after it invalidated two of the aggravating factors, it adequately narrowed the "depraved" factor and weighed that factor, as well as the pecuniary gain factor, against all of the mitigating circumstances. *See Clark,* 616 P.2d at 897. There was no failure to conduct a new and proper sentencing calculus. No constitutional error occurred. Accordingly, Clark's ends of justice argument fails. *See Herrera,* —— U.S. at —— —— ——, 113 S.Ct. at 859–60.

### 3. Ineffective Assistance of Counsel Claims

■ Clark contends that he is facing death because of constitutionally ineffective assistance of his trial counsel, Arthur Atonna, concerning Atonna's advice regarding a plea offer that Clark rejected and Atonna's handling of Clark's trial and sentencing.

We decline to revisit the merits of Clark's ineffective assistance of counsel claims. All are successive. Clark raised ineffective assistance of counsel in his first federal habeas corpus petition. Although Clark modifies his ineffective assistance of trial counsel claim to include an allegation that he received faulty advice concerning a possible plea agreement, such an allegation merely represents "a different factual basis or argument asserted to support the same legal theory advanced previously" and does not constitute a new ground for relief. *Campbell,* at 516. The trial investigation, preparation, presentation and sentencing errors identified by Clark in his most recent petition are also recharacterizations of the ineffective assistance of counsel theory advanced in his first federal petition. Clark has not established the requisite cause to warrant reexamination of the same ineffective assistance of counsel claims he raised in his first federal habeas petition. *See Campbell,* at 524. And, no fundamental miscarriage of justice would result from our refusal to allow Clark to relitigate these issues.

At oral argument, Clark's attorney suggested that his strongest ineffective assistance of counsel claim is the alleged faulty advice given Clark by his trial counsel concerning a possible plea agreement. Clark

argues he was deprived of effective assistance of counsel, in violation of his Sixth and Fourteenth Amendment constitutional rights, because his trial counsel did not adequately advise him concerning the state's plea offer, which he rejected, to plead guilty to two of the murders in exchange for the state agreeing not to seek the death penalty. Although we have held that this, as well as the other ineffective assistance of counsel claims, is successive, we nevertheless will briefly address the merits of this "strongest" claim Clark asserts for relief.

■ Clark argues that had he accepted the plea agreement, the death penalty could not have been imposed. While this is true, *see State v. Brewer,* 170 Ariz. 486, 499, 826 P.2d 783, 792, *cert. denied,* —— U.S. ——, 113 S.Ct. 206, 121 L.Ed.2d 147 (1992); *State v. Murphy,* 113 Ariz. 416, 418, 555 P.2d 1110, 1112 (1976), it does not establish ineffective assistance of counsel. Clark's affidavit clearly shows that he was advised of the consequences of accepting or rejecting the offered plea agreement. Clark has failed to show that he was prejudiced by his trial counsel's alleged failure to advise him of the possibility of a "no contest" or an *"Alford"* plea. *See North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). Clark has not made the required showing of actual prejudice, *see Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), because it is pure speculation whether such a plea would have been acceptable to both the state and the court under the same no-death penalty condition as the plea that was offered. The prosecutor, in fact, stated in his affidavit that a "no contest" plea would not have been acceptable: "I did not offer and would not have agreed to any arrangement, such as a 'no contest' plea, which would have permitted Clark to avoid taking responsibility for the murders he committed." Affidavit of Joseph Fuller, State Record Item L, Ex. 6. Clark does nothing to refute the prosecutor's statement by showing, for example, that the prosecutor regularly accepted no contest or *Alford* pleas in such situations and was likely to have done so again. Clark has not shown he was deprived of his constitutional right to effective assistance of counsel.

### 4. Prosecutorial Misconduct

Clark argues newly discovered evidence about the prosecution's handling of the John Doe witness shows his conviction was based, in part, upon perjured testimony and the state committed a *Brady* violation. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

■ To the extent this claim is a renewed challenge to the district court allowing the John Doe witness to testify without revealing to the jury his true name and place of residence, the claim is successive. It was raised in Clark's first habeas corpus petition and rejected on the merits by the district court and by this court. *Clark,* 958 F.2d at 854–55. Review of the merits of this successive claim is not justified because Clark has not shown cause for seeking review of the same claim for relief previously presented, nor has Clark shown a miscarriage of justice would result if we did not revisit this claim.

■ To the extent Clark seeks review of whether the newly discovered evidence consisting of unrevealed facts about Doe and the prosecution's handling of Doe demonstrate that the prosecution withheld *Brady* material and suborned perjury from Doe, the claim is abusive. Clark's "newly-discovered evidence" allegedly demonstrates there was no real threat to Doe to support his being allowed to testify without revealing his true identity, that Detective Hemenway gave Doe whiskey and Darvocets before his testimony at the preliminary hearing, that Doe was anonymously given a drug screening test before the preliminary hearing that revealed Darvocet use, that Doe received undisclosed compensation for his testimony in being allowed to run up large liquor bills while in Arizona waiting to testify at the trial, that Doe may have been paid $75 or $100 by the El Paso police after he testified at the trial, and that Doe's full criminal history had not been revealed.

Clark cannot demonstrate adequate cause for failing to develop this claim earlier. "[P]etitioner must conduct a reasonable and diligent investigation aimed at including all

relevant claims and grounds for relief in the first federal habeas petition." *McCleskey,* 499 U.S. at ——, 111 S.Ct. at 1472. Clark, who prior to his first habeas petition had knowledge of Doe's true name, date of birth, criminal record, place of residence, and information that Doe was a paid DEA informer, has not demonstrated cause to excuse his earlier failure to investigate the present claim and thereby obtain a sufficient basis to allege a *Brady* violation or a subornation of perjury claim.

■ Clark has also not established the requisite prejudice to excuse an abusive writ. Clark never asserts actual innocence. Clark only argues that with such information he could have impeached Doe more than he did. Even that contention is based primarily on recent hearsay, from someone who may or may not be John Doe, which the person refused to swear to, and which has been denied under oath by members of the prosecution team. The Supreme Court has noted that such "latter-day evidence brought forward to impeach a prosecution witness will seldom, if ever, make a clear and convincing showing that no reasonable juror would have believed the heart of [the witness'] account of petitioner's actions." *Sawyer,* —— U.S. at ——, 112 S.Ct. at 2524; *Herrera,* —— U.S. at ——, 113 S.Ct. at 869 (noting petitioner's newly discovered evidence consisting of affidavits is particularly suspect, because with the exception of one affidavit, the affidavits consist of hearsay).

The newly discovered evidence allegedly withheld from Clark fails to show Clark is actually innocent of the death penalty. *See Sawyer,* —— U.S. at ——, 112 S.Ct. at 2524. The evidence primarily goes to the credibility of Doe. This is insufficient to establish a miscarriage of justice.

5. Influence of Drugs

Clark asserts for the first time in this most recent habeas petition that while he was in jail awaiting trial, and during trial, he was given drugs by his jailers. He asserts that although he can remember being medicated, he did not discuss the medication with his counsel. The medication "made him feel drunk and indifferent to what was happen-

ing." Petitioner's Ex. 11. The drugs given to Clark were Tranxene, Darvocet and Drixoral. Clark alleges that because he was administered these drugs, he was unable to converse adequately with his trial attorney, and this medication prompted him to give an incriminating statement to Detective Hemenway. He argues that as a result of being medicated by his jailors, his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments of the Constitution were violated.

■ Clark has made no showing of cause for not including these claims in his first habeas petition. He does not assert that any of the prescription medicines allegedly administered affected his memory of taking the medicine, so he cannot now complain a lack of memory or knowledge of ingesting the prescription medicine constitutes cause for not presenting the claim on his first federal petition. "[E]ven if the State intentionally concealed the [information that Clark was on prescriptive medicine while in jail], the concealment would not establish cause here because, in light of [Clark's] knowledge of the information ... any initial concealment would not have prevented him from raising the claim in the first federal petition." *McCleskey,* 499 U.S. at ——, 111 S.Ct. at 1474. Furthermore, the issue does not tend to show Clark's actual innocence of either the crimes or the death penalty.

6. Newly Discovered Evidence

■ Clark alleges his confinement, convictions, and sentence violate his Fifth, Sixth, Eighth, and Fourteenth Amendment rights because newly discovered evidence undermines the reliability of his conviction and sentence. The new evidence includes: (1) "possible involvement of an individual ... [who] had been overheard ... saying he was traveling to Cochise County to 'raise some hell' on the weekend of the murders;" (2) evidence Clark was beaten by his parents; (3) evidence Clark was regularly exposed to toxins as a child; (4) evidence tending to impeach the John Doe prosecution witness; and (5) evidence Clark may have suffered from post-traumatic stress disorder around the time of the crimes.

These claims are abusive because Clark did not raise them in his first federal habeas corpus petition. Clark has failed to demonstrate cause for such failure.

Clark has also failed to show prejudice. Neither the presentation of hearsay evidence of possible involvement of another in the crime, additional mitigating evidence, or the affidavit suggesting Clark suffered post-traumatic stress at the time of the crimes, establishes adequate prejudice. *See Harris*, 949 F.2d at 1515 ("[b]ecause 'psychiatrists disagree widely and frequently on what constitutes mental illness,' ... a defendant could, if Harris's argument [regarding newly discovered evidence of mental disabilities] were adopted, always provide a showing of factual innocence by hiring psychiatric experts who would reach a favorable conclusion.").

A fundamental miscarriage of justice will not result by declining to review the merits of this newly discovered evidence. The evidence does not point to Clark's actual innocence of his crimes or of the Arizona death penalty.

### 7. Denial of a Representative Jury Pool and Jury

Clark argues he was denied both his rights of equal protection and his right to a jury selected from a fair cross-section of the community, in violation of the Sixth and Fourteenth Amendments, because Hispanic persons and Hispanic surnamed persons from Cochise County were underrepresented in the jury venire and on his jury at the time of trial. This claim is abusive because it was not presented in Clark's first habeas corpus petition.

Clark has not demonstrated sufficient cause and prejudice to excuse this abuse. The legal basis for constructing such claims existed before Clark filed his first federal habeas petition. *See, e.g., Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975) (fair cross-section); *State v. Taylor*, 109 Ariz. 267, 271–72, 508 P.2d 731, 735–36 (1973) (equal protection). The factual basis Clark now relies on to support this claim also existed at the time of his first federal petition. Because Clark has not carried his burden of disproving abuse of the writ, and

because the jury pool composition does not bear on Clark's actual innocence of the underlying crimes or the death penalty, we decline to reach the merits of this claim.

### 8. Denial of Competent Mental Health Evaluation at Time of Trial

Clark asserts he was denied his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments of the Constitution because the mental health examinations conducted by the court-appointed mental health experts, and the results of such examinations, were inadequate, incomplete, and unreliable. These claims are abusive because they were not presented in Clark's first habeas corpus petition. Clark has not demonstrated cause and prejudice to excuse such abuse. We also find no fundamental miscarriage of justice would result if Clark were not allowed to relitigate the merits of this dispute. *See Harris*, 949 F.2d 1497.

### 9. Motion to Vacate and Reopen Judgment

Contemporaneous with the filing of his second federal habeas petition, Clark filed a motion in the district court to vacate and reopen the judgment against him based on the intervening case of *Richmond v. Lewis*, — U.S. ——, 113 S.Ct. 528, 121 L.Ed.2d 411 (1992). *See* Fed.R.Civ.P. 60(b)(6) (reopen final judgment for "any other reason justifying relief from the operation of the judgment"). The district court denied this motion.

Clark maintains a Rule 60(b) motion is permissible in a habeas proceeding. *See Carriger v. Lewis*, 971 F.2d 329, 332 (9th Cir.1992) (en banc) (district court that reviewed federal habeas petition did not have jurisdiction to review Rule 60(b) motion once a notice of appeal was filed), *cert. denied*, — U.S. ——, 113 S.Ct. 1600, 123 L.Ed.2d 163 (1993). Contrary authority suggests, however, that where a habeas petitioner tries to raise new facts or new claims not included in prior proceedings in a Rule 60(b) motion, such motion should be treated as the equivalent of a second petition for writ of habeas corpus. *See Blair v. Armontrout*, 976 F.2d 1130, 1134 (8th Cir.) (Rule 60(b) motion treated as the equivalent of a second petition

**826**

for writ of habeas corpus), *reh'g en banc
denied,* (1992), *cert. denied,* — U.S. —,
113 S.Ct. 2357, 124 L.Ed.2d 265 (1993); *but
cf. May v. Collins,* 961 F.2d 74, 75–76 (5th
Cir.1992) (merits of Rule 60(b) motion as-
sessed without invoking second habeas peti-
tion doctrines).

Even if the *McCleskey* and *Sawyer* restric-
tions on successive and abusive writs do not
apply to a habeas petitioner bringing a Rule
60(b) motion to vacate and reopen judgment,
Clark's Rule 60(b) motion was still properly
denied because *Richmond v. Lewis,* — U.S.
at —, 113 S.Ct. 528, does not undermine
our decision on the merits in Clark's first
federal habeas petition. As we have stated,
the Arizona Supreme Court reviewing
Clark's sentence on direct appeal adequately
narrowed the "depraved" aggravating factor
and reweighed the mitigating and remaining
two aggravating circumstances after revers-
ing the trial court's findings on two other
aggravating factors. Therefore, Clark's Rule
60(b) motion was properly denied.

### CONCLUSION

Clark's application for a certificate of prob-
able cause and stay of execution is denied.
This appeal is dismissed.[3]

---

**3.** In view of our dismissal of Clark's appeal, the
questions whether the district court erred in de-
nying Clark's requests for an evidentiary hearing
and for leave to conduct discovery are moot.