111 F.3d 616
 97 Cal. Daily Op. Serv. 2668, 97 Daily Journal
D.A.R. 4745
Jose Roberto VILLAFUERTE, Petitioner-Appellant,
v.
Terry STEWART,* Director of the Arizona
Department of Corrections; Grant Woods, Attorney
General of the State of Arizona,
Respondents-Appellees.
 No. 93-99015.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 12, 1994.
Submission Withdrawn Nov. 15, 1994.
Resubmitted Jan. 23, 1996.
Opinion Filed Jan. 30, 1996.
Opinion Withdrawn June 17, 1996.
Decided April 11, 1997.
 
 Daniel D. Maynard, Johnston, Maynard, Grant & Parker, Phoenix, Arizona, for petitioner-appellant.
 Jack Roberts, Assistant Attorney General, Phoenix, Arizona, for respondents-appellees.
 Appeal from the United States District Court for the District of Arizona, Stephen M. McNamee, District Judge, Presiding. D.C. No. CV 91-00729-SMM.
 Before: FLETCHER, THOMPSON and T.G. NELSON, Circuit Judges.
 PER CURIAM.
 
 
 1
 Jose Roberto Villafuerte appeals the district court's denial of his first federal petition for a writ of habeas corpus. An Arizona state court sentenced Villafuerte to death after a jury convicted him of felony murder based on kidnapping. Villafuerte argues that the state trial court erred in several respects at both the guilt and sentencing phases of his trial. He also claims bad faith failure by the state to conduct a thorough investigation, an unlawful arrest violated his rights to due process, and ineffective assistance of counsel.
 
 
 2
 We have jurisdiction over this appeal pursuant to 28 U.S.C. § 2253, and we affirm the district court's denial of Villafuerte's petition for a writ of habeas corpus.
 
 FACTS
 
 3
 During the afternoon and evening of February 21, 1983, Villafuerte physically assaulted Amelia Schoville, his girlfriend, in the trailer he was renting. Villafuerte then tied Schoville to a bed in the trailer, gagged her, and drove away in her car. Villafuerte asserts that he bound her to keep her from calling the police, that he was intoxicated at the time, and that he left instructions with two friends who were allegedly present in the trailer to release Schoville after he left.
 
 
 4
 The next day, on the afternoon of February 22, a deputy sheriff found Villafuerte sleeping in a dry creek bed near Schoville's car. Villafuerte smelled of alcohol and seemed to be intoxicated and in a stupor. The deputy took Villafuerte into custody.
 
 
 5
 On February 23, while being questioned by the police, who at that time knew nothing about Schoville, Villafuerte expressed concern about Schoville, explaining that he had left her tied up in the trailer. When the police investigated, they found Schoville bound, gagged, and dead. Schoville had died of asphyxiation, apparently caused by a gag wrapped around her head and stuffed in her mouth.
 
 
 6
 A grand jury indicted Villafuerte for theft, Ariz.Rev.Stat. § 13-1802; kidnapping, Ariz.Rev.Stat. § 13-1304; and first-degree murder, Ariz.Rev.Stat. § 13-1105(A)(2).[1] A jury convicted Villafuerte of theft, kidnapping enhanced to dangerous, and felony murder. The state trial court sentenced Villafuerte to death, pursuant to Ariz.Rev.Stat. § 13-703. The Arizona Supreme Court affirmed the convictions and sentence, State v. Villafuerte, 142 Ariz. 323, 690 P.2d 42 (1984), and the Supreme Court of the United States denied certiorari. Villafuerte v. Arizona, 469 U.S. 1230, 105 S.Ct. 1234, 84 L.Ed.2d 371 (1985).
 
 
 7
 The state trial court dismissed Villafuerte's first state habeas corpus petition because Villafuerte refused to verify the petition. Villafuerte did not appeal. Subsequently, Villafuerte filed a second state habeas corpus petition. The state trial court again denied relief, and the Arizona Supreme Court affirmed the denial.
 
 
 8
 Villafuerte next filed a petition for a writ of habeas corpus in the federal district court for Arizona. In it, he alleged twenty-six grounds for habeas relief. The district court granted the State's motion for summary judgment. Villafuerte appealed.
 
 
 9
 In an opinion filed January 30, 1996, we reversed the district court's denial of the writ. Villafuerte v. Lewis, 75 F.3d 1330 (9th Cir.1996). We held that the state trial court committed constitutional error by not instructing the jury on unlawful imprisonment as a lesser included offense to kidnapping. We later granted the State's petition for rehearing and withdrew the opinion. Villafuerte v. Lewis, 81 F.3d 915 (9th Cir.1996). We now revisit the instruction issue along with the other issues in the case, some of which we have not previously addressed.
 
 DISCUSSION
 A. Standard of Review
 
 10
 We review de novo a district court's decision to grant or deny a petition for habeas corpus. Calderon v. Prunty, 59 F.3d 1005, 1008 (9th Cir.1995). A state court's factual findings are entitled to a presumption of correctness. 28 U.S.C. § 2254(d)(1994); Melugin v. Hames, 38 F.3d 1478, 1482 (9th Cir.1994). However, we review de novo a state court's determinations of mixed questions of law and fact. Powell v. Gomez, 33 F.3d 39, 41 (9th Cir.1994).[2]
 
 B. Guilt Phase Issues
 1. Alleged Instructional Errors
 
 11
 As a threshold matter, we examine whether we have jurisdiction to review Villafuerte's claim that the state trial court erred by failing to instruct on unlawful imprisonment as a lesser included offense of kidnapping. The State argues, and the district court held, that the claim was procedurally barred because Villafuerte did not raise this claim until his second state habeas corpus petition.
 
 
 12
 In our prior opinion, we held that this claim was not procedurally barred. In its petition for rehearing, the State argued that our holding was in error. Because we affirm the district court's rejection of the claim, we will assume, without deciding, that the claim is not procedurally defaulted.
 
 
 13
 Villafuerte argues that the state trial court erred by failing to instruct the jury on unlawful imprisonment as a lesser included offense to kidnapping and that this error requires us to reverse because it "had substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623, 113 S.Ct. 1710, 1714, 123 L.Ed.2d 353 (1993) (quotations and citations omitted).
 
 
 14
 Our analysis of this issue begins with Beck v. Alabama, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980). Beck had been convicted of capital murder under an Alabama statute which allowed the jury to consider only two alternatives: convict on capital murder or acquit. The Supreme Court overturned his conviction for failure to provide an instruction on a lesser included offense. The Court explained in the later case of Spaziano v. Florida, 468 U.S. 447, 455, 104 S.Ct. 3154, 3159-60, 82 L.Ed.2d 340 (1984), that the "goal of the Beck rule ... is to eliminate the distortion of the fact-finding process that is created when the jury is forced into an all-or-nothing choice between capital murder and innocence."
 
 
 15
 In Schad v. Arizona, 501 U.S. 624, 646, 111 S.Ct. 2491, 2504-05, 115 L.Ed.2d 555 (1991), the Court rejected an attempt by Schad to expand the rule of Beck into a rule that requires that "the jury in a capital case be instructed on every lesser included noncapital offense supported by the evidence...." Because the jury in Schad's case was given the choice of second-degree murder, the "central concern of Beck simply [was] not implicated...." Id. at 647, 111 S.Ct. at 2505.
 
 
 16
 Villafuerte's jury was given instructions which permitted verdicts of guilty or not guilty of murder, kidnapping (both dangerous and nondangerous), and theft. The all-or-nothing situation found intolerable in Beck was not present here.
 
 
 17
 The situation here is one level removed from the problem in the Beck case, in that the lesser included offense claim relates to the predicate offense instructions, not to the murder instructions. However, any lingering concern that the jury considered itself bound to convict Villafuerte of capital murder if it found him guilty of kidnapping is alleviated by a communication from the jury after it commenced deliberations. The state trial court's written answer set out the question and its response as follows:
 
 Ladies and gentlemen of the jury:
 
 18
 The Court has received the written question from Juror Gloria Jordan which reads as follows:
 
 
 19
 "If we find defendant guilty of kidnapping does that mean that we have to find him guilty of murder?"
 
 
 20
 The answer to the question is no, you are not required under the law to find the defendant guilty of murder as charged because you may have found him guilty of kidnapping, either dangerous or non-dangerous.
 
 
 21
 You are to apply the law to the facts as you find them concerning each of the charges.
 
 
 22
 The jury also was instructed that, to find Villafuerte guilty of first degree murder, the jury had to find that Villafuerte "caused" Schoville's death. At trial, Villafuerte insisted that Schoville was alive when he left the trailer, that he had not bound her in the manner in which she was found, that he had not gagged her, and that two other people were at the trailer when he left. Villafuerte contended that the two other people at the trailer probably killed Schoville. Accepting Villafuerte's story as true, the jury could have found Villafuerte guilty of kidnapping because he restrained Schoville with the intent to injure her or frighten her. At the same time, the jury could have found Villafuerte not guilty of murder because his actions did not cause Schoville's death and someone else committed the murder. Thus, a finding of guilt on the kidnapping count did not automatically result in a finding of guilt on the felony murder count. We, therefore, conclude the state trial court did not constitutionally err by failing to give a lesser included offense instruction.
 
 
 23
 Villafuerte also argues that the state trial court did not instruct the jury on each element of the kidnapping offense because the state trial court did not define "sexual offense" or "reasonable apprehension of imminent physical injury."
 
 
 24
 When the claim is an instructional error, "[w]hether a constitutional violation has occurred will depend upon the evidence in the case and the overall instructions given to the jury." Duckett v. Godinez, 67 F.3d 734, 745 (9th Cir.1995), cert. denied, --- U.S. ----, 116 S.Ct. 1549, 134 L.Ed.2d 651 (1996). As the Court stated in Henderson v. Kibbe, 431 U.S. 145, 155, 97 S.Ct. 1730, 1737, 52 L.Ed.2d 203 (1977), "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law" and, thus, a habeas petitioner whose claim involves a failure to give a particular instruction bears an "especially heavy burden." Further, "[i]t is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court." Id. at 154, 97 S.Ct. at 1736. At trial, Villafuerte made no such objection.
 
 
 25
 Villafuerte's jury was instructed on kidnapping as follows:
 
 
 26
 A person commits kidnapping by knowingly restraining another person with the intent to, one, inflict death, comma [sic], physical injury, comma [sic], a sexual offense on the victim, or to otherwise aid in the commission of a felony; or, two, to place the victim in reasonable apprehension of imminent physical injury to the victim.
 
 
 27
 Restrain means to restrict a person's movement without consent, without legal authority, and in a manner which interferes substantially with such person's liberty by either moving such person from one place to another or by confining such person.
 
 
 28
 Restraint is without consent if it is accomplished by physical force, intimidation, or deception.
 
 
 29
 If you determine beyond a reasonable doubt that the defendant committed the crime of kidnapping, you must then determine if the offense was a dangerous or nondangerous offense.
 
 
 30
 Kidnapping is a dangerous offense if it involved the use of a dangerous instrument or the intentional or knowing infliction of serious physical injury upon another.
 
 
 31
 Otherwise, it is a nondangerous offense.
 
 
 32
 Dangerous instrument means anything that under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or serious physical injury.
 
 
 33
 Serious physical injury includes physical injury which creates a reasonable risk of death or which causes serious and permanent disfigurement, or serious impairment of the function of any bodily organ or limb.
 
 
 34
 For you, the jury, to find the defendant guilty of kidnapping as a dangerous offense, you must find beyond a reasonable doubt that, first, the defendant committed the crime of kidnapping, and, second, the defendant used a dangerous instrument or intentionally or knowingly inflicted serious physical injury upon the person of Amelia Schoville.
 
 
 35
 Villafuerte has not met his heavy burden of demonstrating he was deprived of a fair trial because the state trial court did not elaborate on these terms. Villafuerte did not object to these instructions or request an instruction defining the terms. Considering the instructions as a whole, the jury was adequately instructed on the elements of kidnapping. Although elaboration was possible, in the circumstances of this case, it was not necessary.
 
 
 36
 Even if the state trial court erred by failing to define the terms "sexual offense" and "reasonable apprehension of imminent physical injury," we conclude the error did not have a "substantial or injurious effect" on the verdict. Brecht, 507 U.S. at 637, 113 S.Ct. at 1722; see also California v. Roy, --- U.S. ----, 117 S.Ct. 337, 136 L.Ed.2d 266 (1996). The jury found Villafuerte guilty of dangerous kidnapping. To reach this finding, the jury had to find that Villafuerte used a dangerous instrument, or intentionally or knowingly inflicted serious physical injury upon Schoville. The jury could have found the dangerous instrument to be the bindings, the method of binding Schoville, or the gag which eventually suffocated Schoville. Also, the severe beating and method of binding and gagging supports a finding of an intent to inflict serious physical injury. In these circumstances, a reasonable juror would not have found Villafuerte guilty of dangerous kidnapping without also finding him guilty of restraining Schoville with the intent to inflict physical injury upon her. Restraining a person with the intent to inflict physical injury is one of the means of committing kidnapping under the applicable statute. The jury was so instructed. The court's failure to define "sexual offense" and "reasonable apprehension of imminent physical injury," two other ways of committing kidnapping, was at most harmless and more likely irrelevant.
 
 2. The State's Investigation[3]
 
 37
 Villafuerte contends the state acted in bad faith by failing to gather and preserve potentially exculpatory evidence. Specifically, he argues the State (1) did not conduct a diligent search to locate three people who, according to Villafuerte, were at the trailer on the day of the murder; (2) did not obtain fingerprints from the bed frame or the door knob and lock on the front door; and (3) did not test the semen sample collected from Schoville to compare the sample to Villafuerte's blood type. Villafuerte argues that had the State collected this evidence, the evidence may have been exculpatory.
 
 
 38
 The State's failure to collect and preserve potentially exculpatory evidence violates Villafuerte's due process rights only if Villafuerte demonstrates the officers acted in bad faith. Miller v. Vasquez, 868 F.2d 1116, 1120 (9th Cir.1989), cert. denied, 499 U.S. 963, 111 S.Ct. 1591, 113 L.Ed.2d 654 (1991). See also Arizona v. Youngblood, 488 U.S. 51, 58, 109 S.Ct. 333, 337-38, 102 L.Ed.2d 281 (1988). The record does not support a conclusion that the State acted in bad faith.
 
 
 39
 With regard to the search for the three people, Villafuerte asserts these three people were at the trailer on the day he tied Schoville to the bed and gagged her[4] and, if located, may have provided evidence concerning the murder. Villafuerte did not provide any information that would have facilitated locating these people. He stated only that "Robert" and "Fernando" were at the trailer. Nevertheless, the officers investigating the murder questioned neighbors about other people staying at the trailer. In addition, after finding a food stamp application in the name of "Robert Grady," Detective Oviedo ran a check on the name in the Phoenix police records and called the Department of Economic Security. Because neither check produced a lead, Detective Oviedo did not pursue the matter further.
 
 
 40
 Villafuerte, on the other hand, had the most information about these people. He said he saw them at the trailer, but he refused to describe them to his counsel when requested to do so. These circumstances do not support a finding of bad faith.
 
 
 41
 With regard to the fingerprints, the officers did not have a constitutional duty to perform all tests desired by Villafuerte. Cf. Youngblood, 488 U.S. at 59, 109 S.Ct. at 338. Villafuerte does not specify why he believes the failure to test for fingerprints in certain areas constitutes bad faith. His argument is limited to an assertion that the officers were negligent. Even assuming the officers were negligent, a negligent investigation does not violate Villafuerte's due process rights. See id. at 58, 109 S.Ct. at 337-38.
 
 
 42
 Nor did the failure to conduct tests on the semen sample violate Villafuerte's due process rights. The record contains no evidence that the semen sample could have had exculpatory value which was apparent at the time the officers failed to perform the tests. See Mitchell v. Goldsmith, 878 F.2d 319, 322 (9th Cir.1989). Villafuerte's own expert testified there was only a one to five percent chance of conducting a successful test due to the delay in obtaining the sample.[5] Villafuerte has failed to demonstrate the officers acted in bad faith by failing to test the sample. Id.
 
 3. Post-Arrest Statements
 
 43
 Villafuerte argues the statements he made after his arrest were involuntary, and consequently, the state trial court erred by admitting them at trial. Specifically, Villafuerte alleges the statements were involuntary because the card he signed waiving his Miranda rights was printed in English, which he says he could not read.
 
 
 44
 The ultimate determination as to whether Villafuerte's statements were involuntary is a legal question which we review independently. Miller v. Fenton, 474 U.S. 104, 115, 106 S.Ct. 445, 452, 88 L.Ed.2d 405 (1985). The state trial court's underlying factual findings, however, are entitled to a presumption of correctness. Id. at 117, 106 S.Ct. at 453; Derrick v. Peterson, 924 F.2d 813, 817 (9th Cir.1990), cert. denied, 502 U.S. 853, 112 S.Ct. 161, 116 L.Ed.2d 126 (1991). In analyzing whether statements were voluntary, we must consider the totality of the circumstances. Derrick, 924 F.2d at 817. We examine Villafuerte's language difficulties in this context. United States v. Bernard S., 795 F.2d 749, 751-52 (9th Cir.1986).
 
 
 45
 We conclude Villafuerte was fully apprised of his Miranda rights and voluntarily waived them. The state trial court's findings made at the voluntariness hearing demonstrate that Villafuerte repeatedly received Miranda warnings in both English and Spanish and that he understood his rights.
 
 
 46
 On the afternoon of his arrest, Officer Hernandez gave Villafuerte Miranda warnings in Spanish and learned Villafuerte understood basic spoken English. Officer Hernandez then explained Villafuerte's Miranda rights to him in English and gave him a card with the Miranda warnings printed in Spanish. Villafuerte read the card and said he understood his rights. Officer Hernandez again explained the Miranda rights in Spanish, and Villafuerte again acknowledged he understood them.
 
 
 47
 Before interviewing Villafuerte later that day, Agent Prida translated in Spanish a Miranda waiver card printed in English. Villafuerte said he understood his rights and signed the card. The card contained all the appropriate Miranda warnings.
 
 
 48
 Because Villafuerte received explanations of his Miranda rights in both English and Spanish and he consistently stated he understood his rights, we conclude his statements were voluntary. See Bernard S., 795 F.2d at 752; United States v. Heredia-Fernandez, 756 F.2d 1412, 1415-16 (9th Cir.), cert. denied, 474 U.S. 836, 106 S.Ct. 110, 88 L.Ed.2d 90 (1985).
 
 
 49
 There also is no indication of any police coercion or improper promises. Nor is there any indication Villafuerte was still intoxicated at the time of his interviews. The first interview did not occur until the morning after his arrest.
 
 
 50
 The state trial court did not err by admitting Villafuerte's post-arrest statements.
 
 
 51
 4. Testimony by Non-Spanish Speaking Officers
 
 
 52
 Villafuerte argues the state trial court deprived him of his right to due process by admitting the testimony of non-Spanish speaking officers regarding statements he made.
 
 
 53
 The morning after Villafuerte's arrest, Deputy Augenstein, who does not speak Spanish, questioned Villafuerte through Officer Hernandez, who does. The same afternoon, Detective Schubert, who does not speak Spanish, questioned Villafuerte through Agent Prida, who does. At trial, the state trial court permitted the two non-Spanish speaking officers to testify as to statements made by Villafuerte during these interviews. Villafuerte argues the state trial court erred by admitting this testimony because the non-Spanish speaking officers merely heard interpretations of his statements from the Spanish speaking officers. We disagree.
 
 
 54
 Officer Hernandez and Agent Prida corroborated the testimony of Deputy Augenstein and Detective Schubert. Villafuerte also corroborated most of their testimony. Further, Villafuerte had ample opportunity to cross-examine Deputy Augenstein and Detective Schubert to test their credibility and the veracity of their testimony.
 
 
 55
 The admission of Villafuerte's statements did not render his trial fundamentally unfair in violation of the Federal Constitution. Butcher v. Marquez, 758 F.2d 373, 378 (9th Cir.1985).
 
 5. Warrantless Arrest
 
 56
 Villafuerte argues his arrest was unlawful and, therefore, the state trial court erred by admitting evidence obtained as a result of the arrest. Villafuerte is not entitled to federal habeas corpus relief for his Fourth Amendment claim if he received a full and fair opportunity to litigate that claim in state court. Stone v. Powell, 428 U.S. 465, 494, 96 S.Ct. 3037, 3052, 49 L.Ed.2d 1067 (1976). Villafuerte first raised his unlawful arrest claim in his post-conviction proceedings in state court. He had a full and fair opportunity to litigate the issue in that court, including a two-day evidentiary hearing. Therefore, we do not consider this claim.
 
 6. Admission of Photographs
 
 57
 Villafuerte argues the state trial court erred by admitting photographs depicting blood at the crime scene, the wrapping of Schoville's head, and the bindings on Schoville. Villafuerte contends the prejudice resulting from the admission of these photographs far outweighed their probative value.
 
 
 58
 To show a violation of due process, Villafuerte must demonstrate that the erroneous admission of the photographs rendered his trial fundamentally unfair. Butcher, 758 F.2d at 378. The photographs were relevant to the charge of dangerous kidnapping. Specifically, the photographs were relevant to prove Villafuerte knowingly restrained Schoville, with the intent to kill, injure, rape, or frighten her. The admission of the photographs did not deprive Villafuerte of a fair trial.
 
 7. Prosecutor's Closing Argument
 
 59
 Villafuerte contends that several statements of the prosecutor in rebuttal violated his right to a fair trial. Improper prosecutorial arguments call for relief in habeas corpus proceedings only if they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Hall v. Whitley, 935 F.2d 164, 165 (9th Cir.1991) (citation omitted).
 
 
 60
 In each instance Villafuerte now complains about, no objection was made at trial. The prosecutor also was responding to arguments made by Villafuerte's counsel in his closing argument. Further, the state trial court instructed the jury that comments made during closing argument are not evidence. When placed in this context, no constitutional error has been shown.
 
 8. Detective Oviedo's Testimony
 
 61
 Villafuerte argues that Detective Oviedo's testimony was inflammatory. Detective Oviedo testified about the condition of Schoville's body when he observed it in the trailer and about his observations during the autopsy. He was present during the autopsy and identified some of the bindings removed from Schoville's body. Any overlap between his testimony and that of Doctor Jarvis, who performed the autopsy, was incidental, not inflammatory, and not prejudicial. Villafuerte has not demonstrated that the admission of this testimony "so fatally infected the proceedings as to render them fundamentally unfair." Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir.1991).
 
 9. Appearance in Jail Clothing
 
 62
 Villafuerte argues he was denied a fair trial because he was compelled to wear jail clothing on the first day of trial. A defendant "may not be compelled to be tried before a jury in identifiable prison clothes." United States v. Rogers, 769 F.2d 1418, 1420 (9th Cir.1985) (citing Estelle v. Williams, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976)).
 
 
 63
 Villafuerte refused to wear the civilian clothes provided for him on the first day of trial because, he contended, the clothing did not fit properly. Villafuerte has not presented evidence that the clothing fit so poorly that, in effect, no alternative to jail clothing was available. Because Villafuerte had civilian clothing available, but chose not to wear the clothing, Villafuerte has not demonstrated that he was compelled to appear in jail clothing. See Jeffers v. Ricketts, 832 F.2d 476, 481 (9th Cir.1987), rev'd on other grounds, 497 U.S. 764, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990).
 
 
 64
 Further, Villafuerte later volunteered to the jury, in response to an unrelated question, that he had been in jail for five months. This gave the jury the same information he now contends was improperly conveyed by his clothing. Any error relating to the jail clothing clearly could not have had the requisite effect on the jury's verdict under Brecht. This testimony also defeats Villafuerte's related claim of ineffective assistance based on his counsel's failure to object to Villafuerte's appearance in jail clothing or to seek a continuance to allow other clothing to be acquired.
 
 10. Testimony of the Medical Examiner
 
 65
 Villafuerte contends that Doctor Jarvis, the medical examiner, testified while intoxicated and this violated his due process rights. Reviewing Villafuerte's petition for habeas corpus relief, the state trial court held that the factual predicate of the claim was lacking. The state trial court found, "In the opinion of this court, there is no admissible evidence to sustain this claim."
 
 
 66
 We agree. Villafuerte asserts that the state trial court called Doctor Jarvis into chambers to chastise him about his intoxicated state. Villafuerte, however, does not explain where, when, or how he learned of this alleged chambers conference. The finding of the state court is presumed correct, on this record. 28 U.S.C. § 2254(d) (1994).
 
 C. Sentencing Phase Arguments
 1. False Evidence in Presentence Report
 
 67
 Villafuerte argues that the state trial court committed constitutional error by relying on false evidence at the sentencing hearing. During sentencing, the state trial court asked Villafuerte if the interpreter had read the presentence report to him. He replied that she had, "but it's erroneous, Your Honor. Therefore, I cannot accept it in this case."
 
 
 68
 Villafuerte testified in his own behalf at that hearing. He mentioned only two errors in the presentence report: he testified he did not tell the probation officer he had only had ten beers on the day of the crime, and he testified he did not tell the probation officer he was a lawyer.
 
 
 69
 There is no indication that the state trial court relied on false information during sentencing. During sentencing, Villafuerte was able to explain why he believed these two statements were erroneous. The state trial court also had heard conflicting testimony on these two issues. At trial, Villafuerte testified: "I got my law degree from the University of Honduras...." Villafuerte also testified that he was not so intoxicated at the time of the offense that he was unaware of his actions.
 
 
 70
 During the state court hearing on his state habeas corpus petition, Villafuerte failed to identify any other false evidence allegedly relied on at sentencing. In its order rejecting this claim, the state court found, "There is no evidentiary basis for this argument." Villafuerte has failed to show the existence of materially false information relied on by the sentencer. This claim fails. See Oxborrow v. Eikenberry, 877 F.2d 1395, 1400 (9th Cir.), cert. denied, 493 U.S. 942, 110 S.Ct. 344, 107 L.Ed.2d 332 (1989).
 
 2. Reweighing
 
 71
 As aggravating factors, the state trial court found Villafuerte had committed the murder in an especially cruel and depraved manner. See Ariz.Rev.Stat. § 13-703(F)(6). The Arizona Supreme Court reversed the cruelty finding but upheld the depravity finding. Villafuerte, 690 P.2d at 50. We sua sponte requested briefing on whether Villafuerte could raise a meritorious claim at this time that, after the Arizona Supreme Court reversed the cruelty finding, it failed to reweigh the aggravating and mitigating evidence.
 
 
 72
 The State argues Villafuerte cannot raise this claim before this court because the claim is procedurally barred and Villafuerte has not demonstrated cause and prejudice for his failure to raise the reweighing claim in his state petition. See Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546, 2564-65, 115 L.Ed.2d 640 (1991). We agree.
 
 
 73
 Villafuerte argues he has shown cause for not raising this claim in his state habeas petition because the legal basis for the claim was not reasonably available until Richmond v. Lewis, 506 U.S. 40, 113 S.Ct. 528, 121 L.Ed.2d 411 (1992), which was decided long after his state habeas proceeding. See Reed v. Ross, 468 U.S. 1, 16, 104 S.Ct. 2901, 2910, 82 L.Ed.2d 1 (1984) (cause may exist if claim is "so novel that its legal basis is not reasonably available to counsel"). In Richmond, the Court concluded that a state appellate court, in a weighing state, did not cure a sentence which relied on an invalid aggravating factor because the appellate court did not actually reweigh the remaining aggravating factors and mitigating evidence to determine the appropriateness of the death sentence. Richmond, 506 U.S. at 48-49, 113 S.Ct. at 535-36.
 
 
 74
 We have previously rejected Villafuerte's argument. Clark v. Lewis, 1 F.3d 814, 821 (9th Cir.1993). In Clark, we rejected the petitioner's argument that the reweighing claim was not available until Richmond. We concluded the claim was an abuse of the writ because the petitioner could have raised the claim in his first federal petition. We reasoned the legal basis for the claim and the well-established principles upon which the Court relied in Richmond were reasonably available long before the Richmond decision. Clark, 1 F.3d at 821-22.
 
 
 75
 Villafuerte has not demonstrated cause for failing to raise his reweighing claim in his state habeas petition. Although he did not have the benefit of Richmond, he did have "the tools to construct [this] constitutional claim." Engle v. Isaac, 456 U.S. 107, 133, 102 S.Ct. 1558, 1574, 71 L.Ed.2d 783 (1982).
 
 
 76
 We also conclude that Villafuerte has not demonstrated that an actual miscarriage of justice would occur if we decline to review the merits of the reweighing claim. See Coleman, 501 U.S. at 750, 111 S.Ct. at 2564-65. To demonstrate an actual miscarriage of justice, a petitioner must establish his actual innocence of the death sentence, "by clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found [him] eligible for the death penalty under the applicable state law." Sawyer v. Whitley, 505 U.S. 333, 336, 112 S.Ct. 2514, 2517, 120 L.Ed.2d 269 (1992). Villafuerte has not carried this burden, because he has failed to show that no reasonable juror (or in this case the sentencing court) would have found the presence of the depravity factor in Schoville's murder, the murder of which he was convicted. Thus, he remains eligible for the death sentence.
 
 
 77
 Because we conclude Villafuerte has failed to show cause for not raising his reweighing claim in his state habeas petition, and he has failed to establish that an actual miscarriage of justice would occur if we decline to review the claim, we do not reach the merits of Villafuerte's reweighing claim.
 
 
 78
 D. Ineffective Assistance of Counsel Arguments
 
 
 79
 Villafuerte was represented at trial, during both the guilt and sentencing phases, by attorney John Rood. Villafuerte claims several instances of ineffective assistance by Rood.
 
 
 80
 The analytical approach to a claim of ineffective assistance is established by Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, Villafuerte must show that his counsel's performance was deficient. Second, he must show that the deficient performance prejudiced him by denying him a fair trial. In making the second showing, Villafuerte "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. at 2068. We may address prejudice without first deciding if counsel's performance was deficient, because Villafuerte must establish both deficient performance and prejudice before he is entitled to relief.
 
 
 81
 1. Failure to Investigate and Prepare for Trial
 
 
 82
 Villafuerte contends that Rood was ineffective under the Strickland standard by failing to interview the police officer witnesses prior to trial. We disagree. Even if Rood's representation was deficient in this regard, Villafuerte has failed to show prejudice. Rood had access to the police reports, had an interpreter read them to Villafuerte, and compared Villafuerte's taped statement with Agent Prida's translation. Villafuerte has not specified how Rood's failure to personally interview the police officer witnesses had any prejudicial effect.
 
 
 83
 Villafuerte also contends Rood's investigation was deficient because he did not locate the people who were allegedly at the trailer on the day of the offense. Again, Villafuerte has not demonstrated that Rood's investigation was constitutionally deficient. Rood sent an investigator to the trailer park to look for leads to Robert and Fernando. He also interviewed Detective Oviedo about the two men. His efforts to locate them were hampered by Villafuerte's refusal to furnish their descriptions.
 
 
 84
 Moreover, the state trial court held a two-day evidentiary hearing in August of 1988. Villafuerte presented no evidence that any amount of investigation could have found Robert and Fernando in time for trial nor that further investigation would have produced anything of assistance to the defense. In fact, Robert and Fernando did not testify at the hearing on Villafuerte's state habeas petition, either in person or by deposition. Villafuerte has failed to show prejudice.
 
 
 85
 Villafuerte also argues Rood was ineffective for failing to investigate and develop a defense based on Villafuerte's alleged intoxication at the time of the murder. We disagree. Such a line of defense would have been inconsistent with the theory of defense advanced at trial.
 
 
 86
 Villafuerte's trial defense was that someone else killed Schoville, and if the police had conducted an adequate investigation they would have turned up the real killer. In support of this defense he testified he tied Schoville up to keep her from calling the police, that other people were at the trailer, and that he gave them instructions to release Schoville after he left. For the jury to accept this defense theory, the jury would have had to believe not only that Villafuerte was telling the truth but that he knew what went on in the trailer while he was there, that he knew other people were there and who they were, that he tied up Schoville so she wouldn't call the police, and that he instructed "Robert" and "Fernando" to release her after he left. Such detailed testimony of these events would undercut, if not destroy, any defense that Villafuerte was so intoxicated he did not know what he was doing.
 
 
 87
 Moreover, Villafuerte testified he was not so intoxicated that he was unaware of his actions at the time of the offense. Specifically, in response to Rood's question as to whether he was intoxicated at the time he tied up Schoville, Villafuerte testified:
 
 
 88
 No, I did not lose my mind at any one time. I was not as drunk, that is to say I was drunk not that I was falling over drunk, now, well, you know, I had been drinking, you know, the way that you feel when you have been drinking, but I was not dragging around that I didn't know what I was doing, no.
 
 2. Failure to Offer Corroborating Evidence
 
 89
 Villafuerte contends that Rood was ineffective by failing to offer certain items of evidence which would have corroborated his story. The first item was an unsigned, undated note of unknown authorship, written in Spanish, addressed to "Roberto," found in the trailer. Villafuerte has not shown who wrote the note, nor has he demonstrated that it would have been admissible at trial had Rood wanted to offer it. Deficient performance under the Strickland standard has not been shown.
 
 
 90
 The second claim relates to bloody towels found in the trailer but not introduced into evidence. In his amended federal habeas petition, Villafuerte alleged that the bloodstained towels showed that he "did not bind the victim, but instead tended her wounds." However, as the district court pointed out, Villafuerte's testimony was that he wiped Schoville's head with a sheet, not towels. The bloody towels did not corroborate his story.[6]
 
 
 91
 The third claim relates to a photograph of Robert Grady found in the trailer. Villafuerte argues that this photograph proved Robert Grady existed and would have prevented the prosecutor from arguing that Grady was a figment of Villafuerte's imagination. Even assuming deficient performance, Villafuerte has not demonstrated prejudice. It is not reasonably probable that the jury would have refused to find Villafuerte guilty of the murder based on an alleged photograph of Robert Grady found in the trailer.
 
 3. Failure to Challenge Legality of Arrest
 
 92
 Villafuerte contends Rood was ineffective by failing to challenge the legality of his arrest. In his amended petition filed with the district court, Villafuerte did not raise this specific claim. Consequently, we decline to address the claim on appeal. See United States v. Oregon, 769 F.2d 1410, 1414 (9th Cir.1985).
 
 4. Failure to Impeach Police Witnesses
 
 93
 Villafuerte next argues that Rood failed to effectively impeach the police witnesses. Villafuerte argues Rood did not point out significant variations between the officers' testimony and their investigative reports and did not elicit information that would have been helpful to the defense. Villafuerte, however, does not identify the alleged variations or the helpful information. Thus, Villafuerte has demonstrated neither defective assistance nor prejudice.
 
 5. Failure to Test Semen
 
 94
 Villafuerte argues Rood rendered ineffective assistance because he did not pursue testing of the semen sample found in Schoville during the autopsy. As discussed above, the passage of time before the body was discovered and the autopsy was performed reduced the chances of successful testing to a near negligible level. Villafuerte has not demonstrated prejudice.
 
 6. Alleged Distancing
 
 95
 Villafuerte also argues Rood "distanced" himself from Villafuerte by interrupting Villafuerte's testimony with "impolite and derogatory" comments. As found by the district court, the record does not support this argument. Rood did not "distance" himself from Villafuerte. Instead, Rood attempted to limit Villafuerte's answers to the questions asked. Villafuerte has not demonstrated Rood's performance was deficient or that any prejudice resulted from Rood's behavior.
 
 7. Voluntariness Hearing
 
 96
 Villafuerte argues his counsel was ineffective at the voluntariness hearing because he did not effectively argue that Villafuerte's statements after his arrest were involuntary. Villafuerte fails to demonstrate prejudice from this claimed ineffective assistance. As discussed above, the evidence was overwhelming that Villafuerte's statements were voluntary. He was repeatedly advised of his Miranda rights in both Spanish and English, and signed a card so indicating.
 
 
 97
 8. Failure to Adequately Present Mitigating Evidence and to Argue Against Aggravating Factors
 
 
 98
 Villafuerte claims Rood was ineffective at sentencing because he did not adequately present mitigating evidence. Villafuerte does not contend Rood failed to present any mitigating evidence. He contends Rood could have presented more effective mitigating evidence if he had been better prepared for the sentencing hearing.
 
 
 99
 Villafuerte presented this claim in his state habeas proceeding. However, he presented no evidence concerning what Rood would have found had he investigated further, nor what lengthier preparation would have accomplished. The state court, in rejecting this claim in the state habeas proceedings, said: "[T]o this date and including the evidentiary hearing of August 11 and 12 of 1988, this court has not been offered a single item of mitigating evidence which was available at the time of sentencing and was not used.... It simply has not been shown. Since it is not shown, the court must believe it is not there." We agree. Villafuerte has not shown prejudice.
 
 9. Failure to Review Presentence Report
 
 100
 Villafuerte argues Rood provided ineffective assistance because he did not review the presentence report with Villafuerte until one-half hour before sentencing. Consequently, Villafuerte argues, he was unable to refute false information in the report.
 
 
 101
 Assuming that Rood's performance was deficient, Villafuerte has not demonstrated prejudice. During the sentencing phase, Villafuerte told the state trial court that the report contained inaccuracies. Villafuerte then testified and pointed out two alleged inaccuracies. Villafuerte has not identified any inaccuracies he did not point out to the sentencing court. Because he has not identified any such additional discrepancies, he has not demonstrated that, had he had a better opportunity to review the presentence report, the sentence would have been different.
 
 10. Cumulative Effect
 
 102
 Finally, Villafuerte argues that the cumulative effect of Rood's alleged errors deprived him of his right to effective assistance. See Cooper v. Fitzharris, 586 F.2d 1325, 1333 (9th Cir.1978) (concluding cumulative effect of alleged errors may demonstrate prejudice), cert. denied, 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 793 (1979). As discussed above, Villafuerte has either failed to establish that his counsel's performance was deficient, or if it was, that he suffered prejudice as a result. To the extent any deficient performance by counsel has been established, Villafuerte has failed to demonstrate that he suffered prejudice as a result of any such alleged deficiencies. The combined effect of any deficiencies also did not result in prejudice.
 
 E. Post-Conviction Proceedings
 
 103
 Villafuerte also raises a claim relating to his state habeas corpus proceedings. He argues that he did not receive an impartial hearing on his second state habeas corpus petition. He contends Judge Goodfarb, the state trial court judge who denied his state petition, rejected his ineffective assistance claims because he was biased in favor of Rood.[7]
 
 
 104
 Villafuerte originally presented this claim to the state trial court, by a motion to disqualify Judge Goodfarb, after the filing of a sixty-five page order denying Villafuerte's habeas corpus petition. The motion was referred to another judge of the Arizona Superior Court, who determined Villafuerte's argument lacked merit and returned the case to Judge Goodfarb. This finding of a lack of bias is entitled to a presumption of correctness. 28 U.S.C. § 2254(d) (1994). The district court did not err in rejecting this claim.
 
 
 105
 Villafuerte also challenges the district court's denial of an evidentiary hearing on this claim. The district court denied the request for an evidentiary hearing without prejudice, directing Villafuerte in any future request to explain why the record or hearing in state court "was inadequate with specific citations to the record;" and if Villafuerte intended to present any "new" evidence, to address the effect of Keeney v. Tamayo-Reyes, 504 U.S. 1, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992), upon this evidence, and argue cause and prejudice for his failure to present it in state court. In renewing the motion, Villafuerte failed to comply with the district court's instructions and instead filed a motion which the district court characterized as based on arguments which "virtually mirror those provided in his original motion."
 
 
 106
 We review for abuse of discretion a district court's decision denying a motion for an evidentiary hearing. United States v. Sarno, 73 F.3d 1470, 1502 (9th Cir.1995), cert. denied, --- U.S. ----, 116 S.Ct. 2555, 135 L.Ed.2d 1073 (1996). Villafuerte fails to show any abuse here. He wanted the district court to hear the same evidence heard by the state court in the state habeas proceeding. This is not a valid reason for an evidentiary hearing in district court. "[Petitioner] is entitled to an evidentiary hearing if he can show cause for his failure to develop the facts in state-court proceedings and actual prejudice resulting from that failure" or a "fundamental miscarriage of justice." Keeney, 504 U.S. at 11-12, 112 S.Ct. at 1721. Villafuerte made no such showing, even though invited by the district court to do so.
 
 
 107
 Villafuerte's counsel brought to our attention, after briefing was complete, the fact that Judge Goodfarb was suspended from office for the balance of his remaining term, in part because of his use of a racial epithet in the course of a judicial proceeding. In re Goodfarb, 179 Ariz. 400, 880 P.2d 620 (1994). Villafuerte asks us to take judicial notice of the decision of the Arizona Supreme Court in support of his argument of bias because Villafuerte is a "black Hispanic."
 
 
 108
 We express no opinion on whether this sort of information can be used to upset a final court order, nor whether the decision of the Arizona Supreme Court in In re Goodfarb would be grounds for seeking to do so. This new claim is based on facts arising after the record was made in the district court and is unexhausted. We decline to consider it here, without prejudice to presentation of the claim to the state courts.
 
 
 109
 AFFIRMED.
 
 
 
 *
 Terry Stewart is substituted for Samuel A. Lewis, his predecessor, as Director of the Arizona Department of Corrections, pursuant to Fed.R.App.P. 43(c)
 
 
 [1]
 Kidnapping was charged as a felony that would support a felony murder conviction
 
 
 [2]
 On April 24, 1996, President Clinton signed the Antiterrorism and Effective Death Penalty Act of 1996(Act), Pub.L. No. 104-132, 110 Stat. 1214, which contained amendments to 28 U.S.C. § 2254. Because the amendments would not change the result we reach, we need not consider the applicability, if any, of the Act to this appeal. All references to section 2254 in this opinion are to that section as it existed prior to the passage of the Act
 
 
 [3]
 Villafuerte has never challenged the state court's factual findings on the ground they do not satisfy the requirements set forth in Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982). Accordingly, Villafuerte has waived any such claim
 
 
 [4]
 Villafuerte made inconsistent statements about two of the people. During post-arrest interviews with police officers, he stated the two people left the trailer at the same time he did. Only later did Villafuerte allege the two people remained at the trailer when he left
 
 
 [5]
 The delay in obtaining the sample is not attributable to the officers. Schoville was murdered on February 21, 1983. Villafuerte was arrested on February 22, 1983, but did not inform officers he had beaten and bound Schoville until the afternoon of February 23, 1983. Later that afternoon, officers discovered Schoville, and the autopsy was performed the next morning, on February 24, 1983. During that autopsy, the semen sample was collected
 
 
 [6]
 To the extent Villafuerte makes a different argument on appeal concerning the towels, we decline to consider it
 
 
 [7]
 Villafuerte also presented a separate claim that he was denied due process in his state habeas corpus proceedings. However, such claims are not addressable in a section 2254 proceeding. Franzen v. Brinkman, 877 F.2d 26 (9th Cir.), cert. denied, 493 U.S. 1012, 110 S.Ct. 574, 107 L.Ed.2d 569 (1989)